JUDGE HARDIN
delivered the opinion of the court.
On the 7th day of January, 1862, Jesse Embry filed a petition in the Garrard Circuit Court, suggesting that Thomas K. Salter, a resident of Garrard County, the owner of a large estate, and a relative of said Embry, was mentally incapable of managing- his estate with ordinary prudence, and praying- that an inquisition be had as to the mind of Salter; and on the 27th of February, 1862, an inquest was held in said court, which resulted in the finding of a jury that Salter was incapable of attending to or managing' his affairs with ordinary prudence or discretion, and had been so since the 7th day of January, 1862; and that, in the belief of the jury, his estate was worth seventy thousand dollars. And the court thereupon rendered a judgment in conformity to the-verdict of the jury, and appointed said Embry to take charge of Salter’s estate as his committee.
Salter was at that time largely involved in debt, and suits were pending against him for debts due from him as principal as well as surety of G. J. Salter, as to whom grounds of attachment had been alleged, and thereupon the property of his said surety as well as of himself had been attached.
And on the 1st day of March, 1862, said Émbry, as committee, exhibited a petition in equity in said court against Salter, and various persons as his creditors, asking *629 that the value of Salter’s estate and his debts be ascertained by a commissioner, and that so much of the estate as necessary be sold for the purpose of satisfying the debts. Under orders of reference several reports were made, and on the 24th of February, 1863, a general order was made consolidating the cause with various other actions pending in the same court against Salter. And afterward, February 27,1867, a rule having been laid on the plaintiff at the instance of the administrator of Hall Anderson, who was the plaintiff in a suit against T. K. Salter and G. J. Salter, to show cause why the venue should not be changed to the Fayette Circuit Court, the following order was made: “ The representative of Hall Anderson having obtained a rule asking a removal of these consolidated actions to the Circuit Court of Fayette County, and the parties interested all being desirous of a speedy decision of the eases, and the Hon. W. C. Goodloe being unwilling to preside on account of his relationship to some of the parties, it is agreed that said eases be transferred to the Fayette Circuit Court, and tried by the Hon. Richard A. Buckner, and that his decision shall be considered judicial, subject to the appeal of any of the parties.”
The several causes were accordingly transferred to the Fayette Circuit -Court, and on the 5th day of October, 1867, the Hon. R. A. Buckner sitting as judge, a final judgment was rendered, determining the rights of various parties, and directing a sale of so much of the lands of Salter as necessary for the payment of debts, amounting, as reported by a commissioner, to at least fifty-four thorn-sand dollars.
In the mean time, it having been suggested in the Garrard Circuit Court that the mental capacity of Salter had been restored, that court ordered that the fact be *630 inquired into by a jury; and thereupon,, on the 2d day of November, 1867, it was found and adjudged that said Salter had been restored to his proper senses. Being thus relieved from disability, he appeared in the Fayette Circuit Court on the 3d day of January, 1868, by a petition in said consolidated causes, suggesting the fact of his restoration, and alleging that it operated immediately to divest his committee of all power to act as such, rendered all subsequent proceedings founded on his legal disability void, and suspended such as had theretofore occurred, which were not void for want of jurisdiction of the court. And he sought to set aside certain sales made under the judgment of October 5, 1867, as irregular and unauthorized, and to be remitted to the control of his property. He also filed his affidavit, setting forth various objections to the order transferring the causes from the Garrard Circuit Court, and designating Buckner as special judge to try them in Fayette; and thereupon moved the court to remand the suits to the Garrard Circuit Court. That motion, as well as exceptions of Salter to the sales of land, was overruled. And as to the effect of the second inquest and judgment relieving Salter from disability, the court decided that, having acquired jurisdiction of the subject-matter of the litigation in consequence of the adjudged mental incapacity of Salter, it was not ousted of ¡that jurisdiction by the subsequent removal of his disability.
Thus retaining its jurisdiction, the court, in its final disposition of the estate of Salter, decided several other questions affecting the rights of the parties, as to each of which the action of the court below is now before this court for revision, either on the appeal of Salter or some of the other parties. The several questions presented will be stated and determined in the order in which they seem to arise upon the record.
*631 1. The validity of the several judgments in the Fayette Circuit Court is questioned: first, because the proceedings were not in conformity to the requirements of the 3d article of chapter 86 of the Revised Statutes; second, because the change of venue to Fayette County was not made in conformity to the general law regulating changes of venue in civil actions; third, because the special judge was not elected by the bar, nor was he sworn, and the fact noted of record in the manner prescribed by article 8 of chapter 27 of the Revised Statutes; and fourth, because, as is insisted, the adjudged restoration of Salter deprived the court of jurisdiction.
As to the first of these objections, it is deemed sufficient to say that the jurisdiction of the chancellor did not depend, in this case, on a compliance with the several conditions on which a court of equity may sell the lands of a lunatic under chapter 86 of the Revised Statutes, but under article 1 of chapter 48 of the Revised Statutes, concerning the custody of the persons and estates of lunatics, the court had ample power to entertain the suit of the committee for a sale of the estate, which was indispensably necessary for the payment of debts; and the proceedings in this case were in substantial conformity to the requirements of the statute. Respecting the second objection, we regard the agreement of the parties to transfer the causes to the Fayette Circuit Court as sufficient to authorize the change of venue to that court, although not the forum to which the causes should have been removed if no agreement had been made. We are also of the opinion that if the special judge, whom the parties had a right to select, acted without complying with any requirement of the statute referred to, the obj ection was waived by the acquiescence of the parties at the time. (Vandever, &c. v. Vandever, &c., 3 Met. 137.) And *632 as to the last ground of objection, it seems to us that, although the adjudged .restoration of Salter operated to remove his committee, and divest the chancellor of the control of his property so far as was cpnsistent with the existing rights of others, it did not oust the court of its jurisdiction already acquired, and then being exercised to subject his estate to the payment of his debts without remitting his creditors to their remedies at law of which Ms legal incapacity had so long deprived them.
The second inquest and judgment thereon did not, as assumed in the 'argument, determine the first to have been void, or invalidate any proceeding which had been taken under them, but only restored Salter to the exercise of rights which had been suspended by them. And in this case, as in cases of discovery, and actions founded on lost writings subsequently found, and others of original equitable cognizance, the chancellor, having rightly acquired jurisdiction, and being competent to afford the relief sought, was not divested of authority to do so because the reason for taking jurisdiction did not continue to exist. (1 Story’s Equity Jurisprudence, sec. 456; Crawford v. Summers, 3 J. J. Mar. 300.)
It results therefore that the court did not err in proceeding to adjudicate upon the rights of the parties after Salter was relieved of disability. Nor does it appear that the court erred in refusing to remand the causes to the Garrard Circuit Court, or in confirming the sales.
2. After Salter was relieved of disability he contracted a debt of five hundred dollars to W. O. Bradley, who recovered a judgment therefor, on which an executMu was issued, which was levied on three small parcels of the land sought to be sold in the pending litigation. And on the 27th day of April, 1868, these parcels of land, containing together about ninety-four acres, were sold, *633 and purchased by Bradley for his debt. He subsequently became a party to these suits, and claiming the land, ineffectually opposed and now'seeks to reverse the judgment subjecting it to sale according to the prayer of the original petition.
It is a necessary sequence of the conclusions, already expressed on the appeal of Salter, that the original suit-of Salter’s committee was effectual as against Bradley unless the benefit of the Us pendens was lost by the failure of. the plaintiff to prosecute his suit with reasonable diligence. Such a want of diligence is not apparent in the record. So far therefore as the rights of Bradley are affected no available error in the judgment is perceived.
3. Prior to the disability of Salter he received into his hands, as the guardian of Thomas Simpson and his four children — viz., Alex. Salter, Belle Salter, G. J. Salter, jr., and John S. Salter — various sums of money, which were allowed and reported by the commissioner as preferred debts, which should be paid in full out of the estate before distribution should be made among the general creditors, it being apparent that the estate was insufficient to satisfy the whole indebtedness of Salter. This reported preference was rejected by the court, and the judgment in that respect is complained of as erroneous to the prejudice of said claimants, for whom it is insisted that their debts were preferred by the 33d section of article 2 of chapter 37 of the Revised Statutes. But we do not so construe the statute, which in our opinion relates exclusively to the settlement of the estate of deceased persons, and distribution among their creditors. As to these liabilities of Salter as guardian therefore we concur in the decision of the court below.
4. Among the several consolidated suits were five actions prosecuted by Hall Andersoifis administrator against *634 G. J. Salter and Thomas K. Salter, in which attachments were sued out on the ground that G. J. Salter so concealed himself that the ordinary process of law could not be served upon him. It is admitted by counsel that four of the claims embraced by these suits have been satisfied, and only the fifth is the subject of controversy on this appeal. The foundation of that suit was Anderson’s liability on a note to Daniel Breck, subsequently paid by him, which was as follows:
“ On the 9th day of January, 1862, we jointly and severally promise to pay D. Breck five thousand one hundred and sixty-six dollars and seventy cents, value received. February —, 1861. G. J. Salter,
Thomas K. Salter,
Hall Anderson, security.”
The circuit court was of the opinion that Anderson paid this debt as the surety of both G. J. and Thomas K. Salter, and that, under the order of attachment obtained by Anderson for indemnity before he paid the debt, he acquired a lien on the property of T. K. Salter, and therefore adjudged that it should have priority in the distribution among the creditors. The correctness of this decision is questioned now, for Salter and his general creditors, on three grounds: first, that he was mentally incompetent to bind himself as an obligor in the note to Breck; second, that at most he was only liable for contribution as the co-surety of Anderson for G. J. Salter; and third, that no lien existed on T. K. Salter’s property for the debt, the ordef of attachment not having been levied.
Belative to the first point the evidence does not repel but conduces to support the legal presumption of Salter’s sanity when he signed the note to Breck; and that presumption is corroborated by the finding of the jury in *635 February, 1862, fixing tbe time of tbe commencement of bis incapacity as the 7th of January, 1862.
Tbe second inquiry suggested is one of fact, to be determined by tbe note and extrinsic evidence. It not only appears tbat Anderson executed tbe note as surety, but tbat tbe consideration for which it was given was a debt contracted long before by G-. J. and T. K. Salter; hence, so far as tbey were concerned, tbe new note was but a renewal of tbeir old obligation, and tbe evidence of a debt tbey botb already owed.
These facts, together with tbe position of Anderson’s name as last on tbe note, with tbe explanatory word “ security” annexed, seem to authorize tbe deduction tbat, as between him and tbe Salters, tbey were botb principals. And this inference, not repelled by any sufficient evidence, is somewhat strengthened by tbe facts tbat tbe Salters, who were brothers, habitually lent tbeir credit to each other; and whenever Anderson became bound on tbeir bills of exchange be avoided contributory liability to either of them by signing as tbeir indorser only. It is true G-. J. Salter testifies, in effect, tbat be regarded T. K. Salter and Anderson as equally bound as bis sureties, but this does not affect tbe conclusion deducible from all tbe evidence tbat, as between themselves, T. K. Salter was principal and Anderson his surety.
But tbe adjudged lien of Anderson’s estate for this debt can not be sustained. For while it apj>ears from tbe record tbat tbe four other attachments of Anderson were levied on tbe property of T. K. Salter, tbe fifth one, which was for tbe debt to Breek, was not so levied. Tbe judgment giving priority to tbe claim must therefore be reversed.
5. On tbe 28th of January, 1861, Thomas K. Salter and Jordan Perkins executed tbeir joint note to A. J. Harris’s administrator for $1,710.75, tbe price of four slaves sold *636 to Salter, payable January 1, 1862. At tbe maturity of the note a suit was brought upon it, in which Perkins was served with process January 9, 1862, and Salter January 10, 1862; and- on the 21st of February, 1862, a judgment was rendered against Perkins, and the cause was continued as to Salter.
After having replevied the judgment, Perkins obtained an injunction to stay its collection, upon his petition in equity against Harris’s administrator and the committee of Salter, setting forth that Salter was insane when he ostensibly purchased the slaves; hence no title vested in him to the slaves, and no obligation was imposed on him by the execution of the note, which was therefore without consideration and not obligatory as the note of Perkins. He sought to be relieved for irregularity in rendering judgment against him alone, and continuing the case as to Salter, without apparent reason, and alleged other facts in excuse of his failure to defend the action. And Embry, as committee of Salter, filed a cross-petition praying for a cancelment of the contract. Upon the issues in the case the injunction was dissolved and the petition dismissed, and Perkins has appealed to this court.
The averments of the petition and cross-petition, importing the mental incapacity of Salter when he purchased the slaves, not being in our opinion sustained, the judgment must be affirmed; the other grounds of objection to the judgment being also deemed unavailable.
But as it appears the debt of Harris’s administrator has been allowed, and adjudged also against the estate of Salter, any part of it which may be so paid will be a satisfaction of so much of the debt against Perkins; or if the latter shall pay the judgment against him, he will have a right to be substituted to the rights of Harris’s administrator as against Salter’s estate.
*637 6. On the 1st day of January, 1861, G-. J. Salter and Thomas 3L Salter executed a bond to Q-. W. Dunlap, as commissioner in a suit of Collier’s heirs v. Collier’s heirs, for one thousand dollars, the price of a slave sold under a judgment in said case. An execution, issued on that bond, was levied on the property of T. K. Salter, February 12, 1862. And on the 18th of March," 1862, Jesse Embry, acting under the advice of his counsel as to his duty as the committee of Salter, filed a petition in equity, and thereon enjoined the collection of said sale bond, thereby discharging the levy; the alleged grounds of the injunction being irregularity affecting the validity of the sale, and that Salter was of unsound mind when the sale bond was taken. The injunction yuis afterward dissolved, and the debt devolved on J. P. Chenault and Gr. W. Tribble, the sureties of Embry in the injunction bond, who were compelled to pay it. The court ordered the amount so paid by them to be repaid to them out of Salter’s estate as a preferred claim; and Salter and his general creditors complain of this as error.
The correctness of this decision does not depend on any right of the. sureties of subrogation to the lien acquired by the levy of the execution. That having been released by the injunction, was not revived by its dissolution. But the claim of the sureties rested on an entirely different principle. Having discharged a legal liability of their principal, incurred in the management of the estate, which he held in trust, they were, on well-settled principles, entitled to substitution to such rights of indemnity or remuneration as he would have been entitled to if he had paid the debt himself.
The levy of the execution having created an encumbrance on the estate, the committee had a right to pay it, and look to the estate for reimbursement. Did he lose *638 this right of indemnity by assuming the legal responsibility of enjoining the debt, under the advice of counsel, in order to litigate it in behalf of the estate ?
In the case of Cross v. Petree, 10 B. Monroe, 413, the general principle is announced that “a trustee who, in the faithful discharge of his duty, has in a mere matter of judgment or discretion fallen into an error that has resulted in an injury to the persons interested in the trust, is not, in general, responsible for the loss, where he has acted in good faith and not been guilty of gross negligence.” And it is an established principle that a court of equity will relieve trustees acting upon professional advice, or with the best judgment they could form, from the losses of the trust property. (Thompson v. Brown, 4 Johnson’s Ch’y Rep. 619; Hill on Trustees, 572.) In 2 Story’s Equity Jurisprudence, section 1272, the principle is laid down that “when a trustee has acted in good faith in the exercise of a fair discretion, and in the same manner as he would ordinarily do in regard to his own property, he ought not to be held responsible for any losses accruing in the management of the trust property.”
It appears from the evidence in this case that Embry obtained the injunction on the advice of counsel on which he had a right to rely, and that he did so in good faith, acting within the scope of the authority and discretion which was reasonably necessary in order to effectually discharge the difficult trust imposed by his appointment as committee; and having done so, the responsibility incurred was properly devolved on the estate for the relief of himself and his sureties. There was no error therefore in allowing the claim.
7. The decision of the last question considered must determine the single remaining inquiry as to the action of the court in ordering the payment of the debt of *639 Samuel Hiatt out of the estate upon the dissolution of the injunction by which he was prevented from enforcing the liens acquired by the levy of Ms executions on Salter’s property. Although the execution lien was discharged by the injunction, the court properly protected the committee and his sureties by ordering the payment of the debt out of the estate.
Wherefore, in accordance with the foregoing conclusions, the judgment directing payment of the debt of Hall Anderson’s administrator as a preferred claim is reversed, and the causes are remanded for a further judgment and proceedings consistent with this opinion; but, no other error appearing, the other judgments and orders sought to be reversed are affirmed.