Brooks, Waterfield & Co. v. Staton's adm'r, &c.

CASE 32—EQUITY—DECEMBER 7, 1880.

# Brooks, Waterfield & Co. v. Staton's adm'r, &c.

APPEAL FROM BRACKEN CHANCERY COURT.

1. B. W. & Co. advanced money to W., upon a contract that W. would buy tobacco, prize and ship it to B. W. & Co., who were to sell it on commission, and out of the proceeds indemnify themselves for advances. W. shipped a portion to B. W. & Co., but having received $1,290 more than he had accounted for, agreed that they might take possession of a lot of tobacco in his warehouse which he had bought for them, prize it, and account for it at the rate of nine dollars per hundred. They took possession, and afterwards W.'s creditors attached it, alleging W.'s insolvency, and that he had preferred B. W. & Co. as his creditors. Held, that the transaction did not come within the act of 1856.

2. From the time the advances were made there was an inchoate right to the property on which the advancements were made, and this right became complete when the creditor, with reasonable diligence, reduced it to possession before other equities intervened.

HALLAM & PERKINS FOR APPELLANTS.

1. The facts do not show that Wiley contemplated insolvency. He was doing precisely what he contracted to do, and was not insolvent.

2. The tobacco may be regarded as having been set apart for the particular purpose of the contract between appellants and Wiley, and as soon as appellants took possession of it their lien was complete, and superior to that of appellees. (Whitehead vs. Woodruff, 11 Bush, 214; Whitaker v. Garnett, 3 Bush, 411; Thompson v. Heffner, 11 Ib., 361; Bard v. Stewart, 3 Mon., 72; 51 Ala., 337; 2 Paine's U. S. C. C., 362; 1 Curtis's U. S. C. C., 130; 24 Wend., 169; 49 N. Y., 74; Newby v. Hill, 2 Met., 531; Corn v. Sims, 3 Ib., 398; 14 Peters, 490; 6 Greeenleaf, 51; 23 Wall., 35; 1 Met., 455; 2 Ib., 338; 4 Ib., 215; 2 Duv., 279; 21 Pick., 321.)

No brief for appellee.

JUDGE HINES DELIVERED THE OPINION OF THE COURT.

Appellants, commission merchants in Cincinnati, Ohio, and as such, dealers in leaf tobacco, advanced to J. N. Wiley, of Bracken county, Kentucky, a certain sum of money, upon an agreement that Wiley would purchase tobacco, prize and ship it to appellants, who were to sell

·the same on commission, and out of the proceeds indemnify themselves for advances.    Under this agreement, tobacco was purchased by Wiley, and some shipments made ·to appellants; but Wiley having received $1,290 more than .appellants had realized on the tobacco shipped, the market ·declining, and appellants being apprehensive that the tobacco then in the hands of Wiley, which he had purchased under the agreement, might be seized by the creditors of Wiley, they, by consent of Wiley, took possession of it in the warehouse of Wiley, July 26, 1876, agreeing to prize .and account for it at the rate of nine cents per pound.   Sub-:sequent to the time appellants took possession of the tobacco, and after they had prized and shipped a portion of it, appellee and other creditors obtained attachments upon ·the grounds of Wiley's insolvency, and had them· levied ·upon the tobacco.   The court below adjudged that appellants should account for all of the tobacco taken possession ,of by them on the 26th of July, 1876, upon the ground that this was a preference under the act of 1856, and operated to transfer all of the estate of Wiley for *pro rata* distribution among his creditors.

The only question we will. consider is, whether that transaction is within what is known as the act of 1856.   That act, as now found in the General Statutes, sec. 1, art. 2, chap. 44, provides that—

"Every sale, mortgage, or assignment made by debtors, and every judgment suffered by any defendant, or any act ·or device done or resorted to by a debtor, in contemplation ·of insolvency, and with the design to prefer one or more ·creditors to the exclusion, in whole or in part, of others, :shall operate as an assignment and transfer of all the prop-

erty and effects of such debtor, and shall inure to the benefit of all his creditors."

. The intention of this statute was to secure an equal distribution of the estate of a failing debtor among his creditors according to their contract rights.. The term "creditor" is to be construed to mean a general creditor as distinguished from a lien creditor, or one having rights growing out of contract which are not common to all. It was not contemplated that contract rights existing at law or in equity should be disturbed, nor that a payment or transfer made in pursuance of an agreement entered into at the time, and on the faith of which money was advanced by the creditor or rights parted with by him, should operate as an assignment of all the debtor's property. The exception in the statute, that it shall not apply to any mortgage made in good faith to secure a debt created simultaneously with the mortgage, is not the only exception. For instance, the payment of the purchase price for land, when a lien has been reserved, and the delivery of a pledge as security for money at the time loaned, have been held not to be within the statute. So that we may not, in this instance, apply the familiar rule of construction that the expression of the one exception excludes, by implication, every other. Instead of enlarging the operation of the statute, it appears to us that the best interests of commerce require that it should be restricted to the narrowest compass consistent with the letter and spirit. It is in conflict with the common law, and with the legislation of the greater number of the states of the Union. This fact should not be overlooked in determining the cases embraced by it.

Before the amendment of this statute, by adding the words "every judgment suffered by any defendant, or any

act or device done or resorted to by a debtor," this court said:

"It has been repeatedly held that the giving of a prefer-ence to one or more creditors is not in itself fraudulent as to other creditors; and although the fact is well established that Dunn confessed judgment in favor of these appellants in contemplation of insolvency, and with the design to prefer them to the exclusion of his other creditors, such prefer-ence was not unlawful."

The same disposition to limit the statute in its operation is manifested in Thompson, &c., v. Heffner's ex'r, 11 Bush, 361, and in Whitaker v. Garnett, &c., 3 Bush, 411.

Under a statute similar to the one being considered, the Supreme Judicial Court of Massachusetts has manifested, in Mitchell v. Black, &c., 6 Gray, 100, a disposition to restrict rather than to enlarge the operation of such statutes. The facts of this case are: B furnished P with means to pay freight on cargoes of coal that P might receive in the course of his business. It was agreed that to secure B, the coal was to be transferred to him, and then consigned to P for sale. A bill of sale was made to B of the coal, but no pos-session taken by him. P continued to receive and handle the coal as his own until his insolvency, when B took pos-session. It was held that, as at the time the conveyance was made there was no violation of any provision of the statute, and as possession was taken before proceedings in insolvency were commenced against P, the only interest of creditors was in what might remain after discharging the lien of B. This transaction, though in form a sale, was nothing more than the case of a factor making advances for which he is to have a lien on the goods when they reach his.

possession.   In the opinion it is said: ''If the sale had been absolute in fact as it was in terms, no one would doubt that they would have had the right to interfere and exercise an exclusive control over it, although there had never been any formal delivery of it.   Yet the right of a party, who holds a chattel in pledge or in mortgage, is as strong and available as that of an absolute owner, provided it is followed up and protected by a timely and continued possession.''

Manifestly, there is an equity in one who advances money on the agreement and faith that certain property shall be intrusted to him as a security, which does not pertain to a general creditor, or to one who extends credit without reference to any particular fund or property as security.   From the moment the advances are made, there is an inchoate right in or to the property on the faith of which the advance was made, and this right becomes complete if the creditor, with reasonable diligence, pursues his right by reducing the property to possession before any other equity has intervened.   Such contracts, when the money has been advanced, and before delivery of possession, are partly executed and partly executory.   The delivery of possession completes the contract; and if, at the time the contract was entered into, and the advances made, the parties acted in good faith, and there was no insolvency and no design to prefer one creditor to another, the act of possession, when there are no intervening equities, relates back, and the contract is a unit from the time it was entered into and the advances made.

Here the equity of complainants, acquired by the attachment, was subsequent to that of appellants, and to the completion of the contract under which the advances were made, and was obtained with full knowledge of the equity of appellants.

Something analogous to this occurs when A executes a mortgage to B, which is unrecorded, and, without knowledge of the existence of the mortgage, C extends credit to A, and after knowledge of the existence of the mortgage, obtains an equity by attachment or otherwise. The equity of B is superior to that of C. (Zaring v. Cox's assignee, MS. Opin., 1880.)

Upon the same principle proceeds the case of Newby & Taylor v. Hill & Million, 2 Met., 530. In that case Newby & Taylor became sureties for Lear under an agreement that they should have, as indemnity, a claim held by Lear against Jackson. The assignment of this claim to Newby & Taylor was by parol, subsequent to which appellees obtained an attachment, and claimed priority over Newby & Taylor by reason of it. In the opinion it is said: "The appellees, as attaching creditors, acquired only a lien upon an equitable right to the debt in the hands of the garnishee. But this equity is subordinate to that acquired by an assignee of the debt whose equitable right was created before the commencement of the action." (Corn, &c., v. Sims, 3 Met., 398.)

We are compelled to take notice of the fact that the greater part of the chief products of this state, such as tobacco, corn, wheat, and hemp, as well as cattle, horses, and mules, reach the market through the instrumentalities adopted by the parties to this transaction. The commercial and farming communities were transacting business upon this basis when the act of 1856 was adopted; and when we consider the number and the extent of these transactions, and the sanction they have so long received from those most interested, we ought not to conclude, unless demanded by unequivocal language of the law, that the legislature

intended to make such a radical change in the manner of doing business as would result from holding this transaction invalid. Wherefore, we conclude that the court below erred. in holding the transfer to appellants to be within the act of 1856, and in adjudging that they should account for the tobacco so received by them. Appellants are entitled to hold the proceeds of the tobacco to indemnify themselves for advances, commissions, and expenses. If there is any surplus, it should be distributed according to the rights of the attaching creditors.

Judgment reversed, and cause remanded with directions. for further proceedings consistent with this opinion.

Judge PRYOR dissenting.

JUDGE PRYOR DELIVERED THE FOLLOWING DISSENTING OPINION:

As between an attaching creditor and a party to whom possession had been delivered by the debtor under an agreement to do so in satisfaction of his debt, the creditor in possession would have the prior equity; but where the transfer of the title and possession is properly assailed as having been made in contemplation of insolvency, and with a design to prefer creditors, it presents a different question. The statute having been enacted to prevent an insolvent debtor from preferring one creditor to another, should be so construed as to carry into effect the legislative will, and the objection to the opinion of the court is, that in effect it nullifies the statute. That there may be a parol assignment. of a chose in action, so as to vest the assignee with an equity, is not doubted; but when moneys have been advanced or loaned to one to enable him to speculate on his own account, under a promise that what he buys shall be sold by the party advancing the money, his transfer of the

Brooks, Waterfield & Co. v. Staton's adm'r, &c.

possession after becoming embarrassed, and in contemplation of insolvency, with the design to prefer, brings the case clearly within the act to prevent insolvent debtors from preferring creditors. It is said, however, that the design to prefer does not exist because the debtor is only complying with a promise made at the time he received the money, and the delivery of the property as an indemnity is but the consummation of the agreement. If so, the loan of money under a promise to mortgage certain property, then in existence or thereafter to be acquired, is not within the statute, although the borrower, when ascertaining his embarrassed condition, complies with his promise by executing the mortgage long after the money has been obtained. The same equity exists in the one case that arises in the other, and such transactions caused the enactment of the law preventing unjust preferences. If a lien exists by reason of the contract, of course this lien will be enforced; but as I understand the facts of this case, the appellant had no lien by reason of his advances to enable the borrower to purchase on his own account, and on the failure of the party to comply with his promise, he could be made to answer in damages. This was simply an agreement to indemnify the creditor for the loan of his money by sending him the tobacco purchased to sell on commission.

A promise by the debtor to pay his creditor out of a particular fund gives him no lien, nor does it vest the debtor, when he becomes insolvent, with the right to prefer. An agreement that vests the creditor, at the time the money is loaned, with an equitable title to certain property to secure its payment would not be embraced by the statute, or cases might occur where the period intervening between the loan of the money and the execution of the mortgage or the

transfer of the property, is of such a short duration as would! authorize the chancellor to say that the acts were in effect: simultaneous, as where the mortgage was not signed by all the parties at the same moment, or not acknowledged and. perfected on the same day; but where a mere promise or· agreement is made to mortgage, and the party becoming· insolvent makes the preference, although in good faith and with the purpose of*complying with his promise, it is nevertheless within the statute, and an equitable distribution, should he made.

I therefore dissent from the opinion rendered.