CASE 59—PETITION EQUITY—NOVEMBER 24.

# Hoffman v. Brungs, &c.

APPEAL FROM KENTON CIRCUIT COURT.

1. To BRING WITHIN THE ACT OF 1856 A TRANSFER by a debtor to his creditor, it must appear that it was made in contemplation of insolvency, and with the design to prefer the transferee over other creditors.

*Where an insolvent debtor executes a mortgage to one creditor in a sum sufficient to swallow up his entire estate, the fact that the*

mortgagee regarded the debtor as amply solvent, and that the debtor himself "expected to pull through," will not authorize the belief that insolvency was not contemplated, and that there was no design to prefer.

2. CASE ADJUDGED.—H. advanced money to B. & Co. with which to purchase tobacco, under an agreement that all the tobacco purchased by them during the year should be shipped to the tobacco warehouse of H. for sale on commission, and to indemnify him. After advances amounting to a large sum had been made, B. & Co., having become insolvent, executed to H. their note for the whole amount, and also a mortgage on all the tobacco in their warehouse to secure its payment. *Held*—That this mortgage was within the act of 1856, and operated as an assignment for the benefit of all the mortgageor's creditors. Had the tobacco been actually delivered to H. as a factor before other equities intervened, the case would be different, provided the money advanced was invested in this tobacco.

3. COMMENCEMENT OF ACTION—WARNING ORDER.—The taking of a warning order against a non-resident defendant is the beginning of the action as against him; no summons is necessary.

4. WHILE A MORTGAGE ON A STOCK OF MERCHANDISE may not be enforceable as to goods not in the store at the time of the mortgage, such a mortgage having been enforced by the lower court without defense, this court can not assume that the stock had been replenished, but must assume that the lien existed and was properly enforced.

HALLAM AND MYERS FOR APPELLANT.

Brief not in record.

O'HARA & BRYAN AND COLLINS & FENLEY FOR APPELLEES.

Brief not in record.

JUDGE PRYOR DELIVERED THE OPINION OF THE COURT.

This case is considered for the second time on the petition of appellant for a rehearing. The principal objection to the opinion is, that it overrules, in effect, the doctrine established in the case of Brooks, Waterfield & Co. v. Staten's Adm'r, 79 Ky., 174, and is a departure from the numerous opinions of this court, holding that, to bring the case of the debtor within the act of 1856, the transfer, in contemplation of

insolvency, must appear, and the design to prefer·
one creditor over another.     Counsel asks if those·
uniform decisions are to be overruled, and suggests·
that the question is of too grave a character to be·
overlooked.

We will try to allay the fears of counsel by demon-
strating that there is no analogy between the case
reported in 79 Kentucky and the one being con-
sidered; and further, that *the culminating wrong*
complained of by counsel in this case in taking··
from his client $2,237.76, *actually advanced contem-
poraneously* with the security taken, constituting·
the act of insolvency, exists only in the imagination.
of counsel, unsupported by any testimony, a fact
that a less discriminating mind than his own would.
readily have discovered by the most casual inspection
of the record.

It is gravely urged that the transaction between.
the appellant (his client) and his debtors, determined.
by this court and the court below to be construct-
ively fraudulent, was made upon the faith of Brooks,
Waterfield & Co. v. Staten's Adm'r, above, and hence·
the necessity of adhering to the doctrine of that case·
or overruling it in express terms.

The client may have failed to draw the distinction
between the two cases, still the attorney is in no-
wise responsible for his client's misconception of the·
law.

John Brungs, William Brungs and Joseph Brungs·
were partners, doing business in the firm name of
John Brungs & Bros.     They were merchants, engaged.
in the sale of dry goods by retail, purchasing and.

selling lumber, and also engaged in the purchase and sale of tobacco, and were the owners or in the possession of two large tobacco warehouses in the county of Kenton, where their firm business was transacted. The appellant was the owner of the Bodman Tobacco Warehouse in the city of Cincinnati, and had loaned or made advances to these merchants in Kenton county of large sums of money, that amounted, on the 31st of May, 1882, to the sum of fourteen thousand dollars, for which a note was on that day executed, and at the same time, as a security for the money, a mortgage was executed by the firm to the appellant on all the leaf tobacco of the firm in their warehouse at Morning View, in Kenton county, Ky., and on all the tobacco in their warehouse on their farm in the same county. This mortgage was properly executed and admitted to record, and is the evidence of the act of insolvency resulting in the judgment below denying to the appellant any priority over the appellees, who are also firm creditors.

On the 22d of June, 1882, the firm executed to the appellant their note for $1,500, and to secure the payment gave to appellant a mortgage on all their first and second class lumber in their lumber yard at Morning View. On the same day the firm executed another note for $3,000 to the appellant, and gave a mortgage on two tracts of land in Kenton county to secure its payment.

No money was loaned on either of these notes, the $1,500 and $3,000, nor any consideration passed, but it appears they were credited, or to be credited, on the note for $14,000, secured by the mortgage on

the tobacco. The appellant brought his action to foreclose the mortgages, and obtained an attachment upon the ground that the mortgageors had not suffi-cient property subject to execution, and he was in danger of losing his debt, and the further ground that the defendants (his debtors) were about to make a fraudulent disposition of the mortgaged property. By his petition he credits the note of $14,000 with the two notes of $1,500 and $3,000, executed on the 22d of June, leaving those notes in full force so as to enforce the mortgage on the lumber and the land given to secure their payment. By executing these notes and entering them as a credit on the $14,000 note that was justly owing, and obtaining the additional mortgages, he spreads the $14,000 note over the tobacco, lumber and land.

A part of these appellees, being creditors of the firm, were made by their petition parties to the action, and attacked the transaction of the 31st of May, 1882, as being constructively fraudulent. Pro-cess was served on the debtors composing the firm within the six months, and Hoffman, being a non-resident, a warning order was entered as to him, and after the six months expired he appeared in the action.

It is now insisted, that because no summons is-sued against the non-resident Hoffman, the action was not commenced within the six months. The debtors, whose act in executing the mortgage was constructively fraudulent as to their creditors, were all served with process, or the summons issued with-in the six months, and in proceeding against the

non-resident Hoffman, the only summons known to
the law by which he could have been brought before
the court when no actual service could he had, was
adopted: that is, the warning order.  Any other pro-
cess would have been futile, and this court did not
decide that the appearance after the six months
cured the defective process, nor was the case of
Cecil v. Sowards, 10 Bush, 96, ignored.

In that case it was held that the amended peti-
tions filed were new and distinct causes of action
upon which process must issue, and the charge of
insolvency, etc., having been made for the first time
in the amendments, and process having been issued
for the first time nine months after the filing, it was
too late to make the question.  This court said in
the former opinion, that while no personal judgment
could have been rendered against Hoffman without
an appearance, he did appear, and that removes any
obstacle in the way of a judgment—not a judgment
determining the transfer by the debtor to be within
the act of 1856, but a personal judgment, the court
having already adjudged that the issuing of the
summons against the debtors, and the warning order,
gave the court jurisdiction, and the statute requiring
the filing within six months was no obstacle in the
way of recovery.

It is further argued that it is indispensable to
show, first, that the transfer or mortgage was made
in contemplation of insolvency, and second, with the
design to prefer; but that this court *has decided*, in
the opinion assailed, that no such contemplation nor
any such design was required.

The appellant, Hoffman, when examined as a witness, states that, up to the time of suing out his attachment in this case, he considered the firm perfectly solvent, and worth fully ten thousand dollars over and above their liabilities; yet he takes the precaution to cause the firm to execute to him three mortgages, the first on the tobacco, the second on the lumber, and the third on the realty, and the last two mortgages to secure notes without any other consideration than to be credited on the $14,000 note, so as the amount of that note might be secured by the entire property of the firm.

The individual members of the firm owned no property, and their assets were worth $14,000, and their liabilities amounted to $21,000 at the date of the mortgage. They were believed then by the business community to be in failing circumstances; and because John Brungs, one of the firm, testifies that he had no intention of making an assignment, but expected to pull out, we are asked to adjudge that the mortgage of the 31st of May, 1882, was not made in contemplation of insolvency by the firm, and with the design to prefer the appellant. No stronger case could be made out for enforcing the equity of the statute than appears from this record. The debtor is not only in failing circumstances, but actually insolvent, and executed a mortgage to one creditor in a sum sufficient to swallow up his entire estate; but as the creditor regarded him as worth fully ten thousand dollars over and above his indebtedness, and the debtor states that he *expected to pull through*, therefore this court must believe

that insolvency was not contemplated, and the intention to prefer absent from the mind of the debtor. The acts of the debtor and his failing condition demonstrate what was contemplated by him at the time, and these mortgages, or the one of May 31, 1882, shows the intention to prefer. He may swear that such was not his purpose, but in doing so he makes a statement contrary to the necessary results of his own act. The mortgage was made in contemplation of insolvency, and with the design to prefer. Any other application of the facts involved here would defeat the legislative intent, and enable the debtor to prefer, regardless of the statute; nor is there any reported case in conflict with the views here presented. The design to prefer, in contemplation of insolvency, must be made to appear, and both essentials are clearly established in this case.

It is again said that the court has taken from Hoffman, appellant, $2,033.76, actually advanced contemporaneously with his security. The facts of the record present no such case. It is an assertion of counsel no doubt unintentionally made, but without the semblance of proof to support it.

When the appellant's mortgage was assailed by the other creditors, the former made this defense: That he was engaged in the business of receiving and selling leaf tobacco on commission, and in the usual course of business had made advances to the firm of John Brungs & Bros., and contemplated making other advances to them to enable them to purchase tobacco for shipment to the warehouse

of defendant, to be sold on commission for their account; that in consideration thereof, the firm contracted to and with the defendant that they would deliver to the defendant all leaf tobacco that might come to their ownership during the year 1882; and that, prior to the attachment herein, the firm did deliver to him, under said contract, all the tobacco mentioned in the petition, and thereupon the defendant's lien as factor became complete.

In Brooks, Waterfield & Co. v. Staten's Adm'r, 79 Ky., the firm of B., W. & Co. made advancements of money to W. upon a contract that he would buy tobacco, prize and ship it to B., W. & Co., who were to sell on commission, and out of the proceeds indemnify themselves for advances. The firm had been indemnified in full except about $1,200, and the debtor having tobacco purchased with the firm's money, or for the firm, in a warehouse in Bracken county, made an actual delivery of the tobacco to the firm in discharge of the advances made. It was held that the appellants, having reduced the tobacco to possession before other equities intervened, their lien as factors was superior to an attaching creditor, and the transfer was not within the act of 1856. The doctrine of that case is now the settled law of the land, and was so regarded when the opinion in the present case was delivered.

We have been unable to see in what manner the principle involved and settled in that case is to affect the present appellant. If the moneys advanced by the appellant were invested in this tobacco, and as a factor it had been delivered to him to in-

demnify him for the moneys advanced, it would, according to the doctrine of Brooks, Waterfield & Co. v. Staten's Adm'r, settle this question.

Here there is no pretense that the possession of the tobacco was ever delivered to the appellant, and no proof that the tobacco was purchased even with the moneys advanced, but it is insisted that an agreement, when advancing the money, that all the tobacco purchased by the firm of Brungs & Bros., during the year 1882, should be shipped to appellant's tobacco warehouse for sale on commission, and to indemnify appellant in the loan, gave to the latter a lien over all creditors, although no part of it was ever in their possession as factors, or under their control in any way. That this firm engaged in the business of selling lumber, in the sale of dry goods, and in buying tobacco, had, by reason of their agreement, in consideration of advances made, to ship all the tobacco purchased during one year to appellant's house, a lien superior to all others. When their mortgages and attachment fail to secure them as against others creditors, an effort is made to fall back on the doctrine established by the case in 79th Ky., where the money of the factor purchased the tobacco, and where he had obtained the actual possession before the attaching creditors levied. The distinction between the cases is so apparent that it is useless to discuss the question further.

Again, it is argued that as the mortgage to Mrs. Fry embraced the goods in a retail store, in filing her petition she should have alleged that the stock had not been replenished. In other words,

that the court would take judicial notice of the fact that the habit of merchants was to replenish their stock, and an averment that the goods sought to be sold were the same goods that were in the store when the mortgage was executed is indispensable to the relief sought. No defense whatever was made, and while a shifting mortgage may not be good as to chattels not in the store at the time, we must assume in this case that the lien existed, and was properly enforced.

Judgment affirmed.