CASE 74—PETITION—OCTOBER 16.

## Chapeze v. Young.

APPEAL FROM LOUISVILLE LAW AND EQUITY COURT.

1. THE RELATION OF THE PARTIES TO A NOTE, whether as principal or surety, may be shown by parol, and this rule applies also as to the relation of the sureties to each other.

2. SURETIES—EVIDENCE.—Where one signs a note under an agreement with the principal that he is to be liable, not as surety for the principal alone, but as surety for both the principal and a prior surety, he may show such an agreement by parol, and recover of the prior surety whatever he may have been compelled to pay on account of his suretyship.

THOS. B. FAIRLEIGH AND CHAPEZE WATHEN FOR APPELLANT.

Where A and B sign a note, and B is surety for A, and C signs, without the knowledge of B, designating himself as surety, as between B and C, B is liable for only one-half of the debt and C for the other. (McNeil v. Sanford, 3 B. M., 11.)

BULLITT & SHIELD FOR APPELLEE.

The principal in a joint note signed by himself and surety may obtain as many additional sureties or guarantors as he chooses, and such sureties or guarantors may stipulate the terms of their liability as between themselves and prior parties, and such terms need not be in writing. (Bayles on Sureties and Guarantors, page 119; Brandt on Suretyship and Guaranty, section 230; Thompson v. Sanders, 4 Dev. & Bab., 404; Sales v. Simms, 73 N. Y., 551; Slater v. Slater, 6 Bush, 635.)

JUDGE PRYOR DELIVERED THE OPINION OF THE COURT.

Joseph Gleason executed his note, payable to the German Insurance Bank, for the sum of five hundred dollars, with Benj. Chapeze as his surety. There was nothing on the face of the note indicating the relation of the obligors the one to the other. They were joint-makers, but the bank knew that Chapeze was only surety. The bank, after the execution of the note, declined to discount the paper unless an additional name was procured by Gleason. The latter applied to the appellee, Bennett Young, to sign the paper as surety, and Young did so on the condition and with the agreement that he was binding himself as the surety only of Gleason and Chapeze. The word *security* followed the signature of Young to the note. The note was renewed from time to time, Young affixing his signature to the renewals as he had to the original note. Chapeze was utterly ignorant of the fact that Young's name was on either the original paper or the renewals until the failure of Gleason to pay, when the bank undertook to coerce payment from Chapeze and Young.

Chapeze maintains that Young is liable to contribute to the payment of the note, and having paid his half, says that Young is alone liable for the balance due, and must suffer the loss. The law and facts having been submitted to the court, a judgment was rendered in favor of Young against Chapeze, the former having paid one-half the debt, and is seeking in this proceeding to recover it back from Chapeze.

The argument advanced by counsel for Chapeze, that as the undertaking of Young was unknown to him,

and not at his request, his voluntary agreement to become bound on the paper at the instance of Gleason made him liable as a co-surety, will not avail. It is a general rule, and one well established, that the relation the parties occupy on the paper, whether as principal or surety, may be shown by parol, and this rule applies also as between those of the obligors who are sureties, the liability of each to be determined by any contract they may have entered into with each other. All who sign the note are jointly or severally bound to the payee, but even in such a case it may be shown, as between the obligee and the obligors, the relation subsisting between them.

On a plea of the statute of limitations by the surety, although the note appears on its face to be a joint and several undertaking, it is competent to show by parol that one or more of the obligors signed as sureties.

The liability to contribution between sureties does not arise from any contract between them to that effect. It is unlike that of joint-obligors equally bound as between each other for the debt, where the implied promise at once arises. When the principal becomes solvent and fails to pay, upon his default being made good by one surety, equity says that all should aid in making good the loss. In this case, there was no contract between Chapeze and Young, and no undertaking by Young that he would contribute to Chapeze if default was made by the principal obligor.

The contract was between Young and Gleason, and on the representation by Gleason that Chapeze was

solvent, Young agreed to bind himself as the surety of both Gleason and Chapeze, and signed his name as surety. As surety for whom is the question. The collateral undertaking to be bound as the surety for both Gleason and Chapeze is not inconsistent with the note or obligation on which their names appear. They are all liable to the obligee, but as between each other their liabilities may be shown by an independent contract. Suppose Young had signed his name as surety at the instance of Chapeze, with the agreement that he was only the surety for both the other obligors, it must then be conceded that this agreement could be established by parol, and if so, the agreement with Gleason can be established in the same manner. Chapeze has not been harmed in any way by this agreement between the principal debtor and Young, for Chapeze was already liable, and Young's agreement to become bound for the debt to the bank was not a payment of the debt of Chapeze, or an agreement to pay his debt, but an undertaking to enable the principal debtor to get the money by which the parties then primarily bound on the paper were not to look to him for payment.

The case of McNeil v. Sanford, 3 B. M., 11, does not sustain the position assumed by counsel for the appellant. In that case the court below instructed the jury to find for the party (Sanford) whose name appeared last on the note, for the reason that he did not affix his signature until long after the note had been executed by the other parties, this court holding that the legal deduction from the face of the note was, that Sanford signed as the co-surety of McNeil, although

signed long after McNeil, the other surety, had signed the paper.

In the case of Salter vs. Salter's creditors, reported in 6 Bush, 624, the word security followed the name of Hall Anderson to a note for five thousand dollars, signed by G. I. Salter and Thomas K. Salter. Thomas K. claimed that he was only the surety of G. I. Salter, but this court said it was fairly deducible from all the evidence that, as between themselves, T. K. Salter was principal and Anderson security. In the case of Adams v. Flanagan, 36 Vermont, 400, the plaintiff signed the note as surety, on the representation by the principal debtor that others would sign as sureties also. They did sign the note, but on the express agreement that they signed as sureties only for the principal debtor, and the prior signers to the paper; it was held that they were not co-sureties or liable to contribution. (See also Oldham v. Broom, 28 Ohio St., 41; Brandt on Suretyship, section 230.)

In Bayles on Sureties and Guarantors, page 323, it is said: "When a person signs a note as surety of another, and then a third person signs his name to the note, adding to signature the words, *surety to the above*, the first surety can not, upon paying the note, compel contribution from the second surety, unless it is made to appear that the second surety intended to place himself in the relation of a co-surety with the first. And whenever it appears that the parties never contemplated that a second surety should be liable, except on default of the principal and prior surety, the prior surety can not claim contribution from the second surety." (Harris v. Warner, 13 Wendell, 400 ;

Sayles v. Sims, 73 N. Y., 552; Harrison v. Lane, 5 Leigh., 414; Robertson v. Deathrage, 82 Ill., 511.)

In this case it is insisted that as the principal debtor informed the appellee that appellant was only the surety and nothing more, the contract, if made with Gleason, can not alter the rights of Chapeze. Whilst such is doubtless the case, we can not well see in what way the liability of Chapeze has been or was affected by the signature of Young; and it must be recollected, also, that the law and facts having been submitted to the court, the appellee testified that when the note was presented to him he said to Gleason that he was under no obligation to become his surety, and asked Gleason if Chapeze was solvent, and being informed that he was perfectly good for the debt, said to Gleason that he would sign the note as the surety of the two, and in no other way, and Gleason assenting to this proposition, he then signed the paper with the word *security* following his name.

If such was the agreement, the court below was right in adjudging that Chapeze, as between himself and Young, was liable for the entire debt, and the judgment being sustained by the testimony, is now affirmed.