McCutcheon & Co. v. Caldwell & Son.

Case 41—PETITION EQUITY—June 7.

90   249
94   458

# McCutcheon & Co. v. Caldwell & Son.

### APPEAL FROM LOGAN CIRCUIT COURT.

1. Debtor and Creditor—Fraudulent Preference.—A mortgage· executed by an insolvent debtor to his creditor, with the design to prefer, will operate as an assignment under the statute, although the· debt was created upon the faith of the debtor's promise to execute a mortgage upon demand.

2. Same.—Where a mortgage is executed by an insolvent debtor to secure. both a debt created simultaneously with its execution and a debt pre-· viously existing, it is valid as to the debt created simultaneously, although within the act of 1856 as to the pre-existing debt.

3. Assignment for Creditors—Attorney's Fee.—Although mort- gages executed by a debtor prior to the execution by him of a deed of assignment for the benefit of creditors were declared to operate as. an assignment under the statute, yet, as the assignee was not made a party to the action, and the deed of assignment was, therefore, not. formally adjudged to be void, and the assignee was not deprived of· the possession of the property conveyed to him, an allowance to the assignee's attorneys was proper.

EDWARD W. HINES for appellants.

1. A mortgage executed by an insolvent debtor to an antecedent creditor,. with the design to prefer, operates as an assignment under the statute,. although the debt was created upon the faith of the debtor's promise. to execute the mortgage.     (James, &c., v. Zigler, &c., 9 Ky. Law Rep., 869.)

2. Where a mortgage executed to secure an antecedent debt would other- wise operate as an assignment for the benefit of creditors,'this can not. be prevented by including in the mortgage liabilities created at the time.     (Grover v. Smith, &c., Superior Court, 5 Ky. Law Rep., 250.)

3. In any event, the Evans mortgage falls with that to Caldwell & Son,. which was previously executed; for if the latter operated as an as-- signment for the benefit of creditors, all subsequent transfers were· void.     (McCann, &c., v. Hill, &c., 9 Ky. Law Rep., 137.)

4. The deed of assignment being void (Grimes v. Grimes, 9 Ky. Law Rep., 696), no attorney's fee should have been allowed.

S. R. CREWDSON and JOHN S. RHEA of counsel on same side..

McCutcheon & Co. v. Caldwell & Son.

THOMAS H. HINES for appellees.

1. Where a mortgage is executed to secure an antecedent debt created upon the faith of an agreement to execute the mortgage, it is not a fraudulent preference under the statute. (Jones on Liens, secs. 77, 78; Jones on Mortgages, secs. 163-167; Grover v. Smith, Superior Court, 5 Ky. Law Rep., 250; Brooks, Waterfield & Co. v. Staton's Adm'r, 79 Ky., 174; Payne v. Wilson, 74 N. Y., 348; *In re* Howe, 1 Paige, 125; Reid v. Gallaird, 2 Des. Eq. (S. C.), 552.)

2. The Evans mortgage is valid to the extent of the debt created at the time of its execution.

BROWDER & EDWARDS of counsel on same side.

CHIEF JUSTICE LEWIS delivered the opinion of the court.

This appeal is from a judgment rendered in two actions consolidated and tried together. One of them was instituted October 11, 1886, by F. Raetz and others, creditors of W. H. Whitaker, against parties named, to whom he had executed mortgages, alleged in the petition to have been made by him in contemplation of insolvency and with design to prefer the mortgagees to the exclusion, in whole or part, of others. The other was brought October 12, 1886, by J. B., M. L. and P. R. Whitaker against W. H. Whitaker, G. S. Hardy, to whom a deed of assignment for benefit of creditors was made October 5, 1886, and others, in which the plaintiffs asked for enforcement of liens existing in virtue of two mortgages executed to them by W. H. Whitaker September 30th and October 4th, 1886, for settlement of the transactions of Hardy, trustee, and sale and distribution of proceeds of the property of the debtor according to rights of parties.

By the judgment two claims were allowed to attorneys, one of them for service in writing the deed

of trust to Hardy, and the other for services rendered him in the two actions.  The two mortgages executed to R. B., M. L. and P. R. Whitaker were each adjudged to have been made in violation of section 1, article 2, chapter 44, General Statutes.  That for the same reason no lien existed in favor of Evans, administrator, as to other creditors, in virtue of the mortgage made to him October 4, 1886, except to the extent of two hundred dollars of the debt of five hundred dollars attempted thereby to be secured.

It was further adjudged that by the mortgage made September 30, 1886, to R. H. Caldwell & Son they acquired a lien on the tract of land mentioned, subordinate only to a mortgage lien on the same land, created in 1885, in favor of Evans, administrator, for two thousand one hundred and seventy-one dollars. Hardy, trustee, was not made a party to the action of R. Raetz and others, consequently the chancellor did not formally adjudge the deed of assignment to be void and of no effect, as prayed by them; nor was the trustee deprived of possession of the property conveyed to him, though he was made subject to the jurisdiction and orders of the court.  It thus resulted that the lower court was not authorized to wholly reject the claims mentioned; nor can this court reverse the judgment as to them, as there is nothing to show them unreasonable in amount.

It appears that two hundred dollars of the five hundred dollars, for which W. H. Whitaker gave to Evans, administrator, his note on October 4, was money that day loaned, the residue being a pre-existing debt. It is expressly provided that the statute under con-

sideration shall not vitiate or affect a mortgage made in good faith to secure a debt or liability created simultaneously with such mortgage, if the same be lodged for record within thirty days after its execution. And in Farmer v. Hawkins, &c., 79 Ky., 184, it was held that although a mortgage may be within article 2, chapter 44, as to such part of a debt as previously existed, yet it is a security for so much as may be created simultaneously. The same doctrine was, in substance, settled in Whitaker v. Garnett, 3 Bush, 402. The chancellor did not, therefore, err in respect to the mortgage to Evans, administrator.

March 27, 1886, W. H. Whitaker purchased of R. H. Caldwell & Son mules at the price of eighteen hundred dollars, for which he gave his note, payable in six months. According to the statements of Caldwell & Son, they did not then exact of Whitaker mortgage security, which he was willing and able to give, because they regarded the debt safe without; and, in fact, he was at the time solvent, for, as shown by an exhibit he made, his assets were, in the language of R. H. Caldwell, twice as much as his debts. But they plead, and also testify to a verbal agreement then made, that he was to give to them a mortgage on demand. No demand was made for execution of the mortgage until September 30, three days after the note became due, and the natural conclusion is, that it was then done because R. H. Caldwell & Son had become convinced of the fact, about which there is now no controversy, their debt was insecure, and in danger of being wholly or partially lost.

Of the three other mortgages executed September

30 and October 4, two were adjudged by the lower court wholly within operation of the statute, and the third partially so, of which action none of the mortgagees have complained, nor, under the circumstances, can justly complain, for we think it manifest those mortgages were made by W. H. Whitaker in contemplation of insolvency and with design to prefer. There is nothing to save the mortgage to Caldwell & Son from the same fate, if the verbal agreement mentioned be not sufficient for the purpose. By its express terms the only condition in which operation of the statute can be limited or restricted is when a mortgage is made in good faith to secure a debt or liability created simultaneously with such mortgage. And it seems to us virtue can not be imparted to a mortgage made months after creation of the debt, so as to affect other creditors, without violating the express language used and defeating the main purpose of the statute; for what protection can be afforded by it to other creditors of a debtor who has transferred his property in contemplation of insolvency and with design to prefer, if vendees and mortgagees be allowed to found superior equitable liens upon the property sold or mortgaged in virtue of unenforceable verbal agreements, alleged to have been made months before, and never made known or attempted to be carried out until the debtor becomes insolvent?

The case of Brooks, Waterfield & Co. v. Staton's Adm'r, 79 Ky., 174, was where B. W. & Co., commission merchants, and as such dealers in leaf tobacco, advanced to W. a certain sum of money upon an agreement that W. would purchase tobacco, prize and

ship it to B. W. & Co., who were to sell the same on commission, and out of the proceeds indemnify themselves for advances. It was held that from the time the advances were made there was an inchoate right to the property on which they were made, which right became complete when the creditors, with reasonable diligence, reduced it to possession before other equities intervened. In that case the agreement between the parties, being in writing, was definite as to the property, as well as money advanced, unconditional and enforceable. In this case it was not contemplated by the parties the mules were to be retained by Whitaker to await the demand of Caldwell & Son for a mortgage on them, but he had the right to sell and dispose of them, as well as the land which he subsequently mortgaged; and besides, the agreement was not enforceable, but was executed by Whitaker voluntarily, and with the design denounced by the statute, and preference was thereby obtained by Caldwell & Son, which they did not previously have, nor could coerce from Whitaker.

In the case of James v Zigler, 9 Ky. L. R., 869, it was held that although a debt was created upon the faith of the debtor's promise to transfer a certain claim to the creditor, yet, as the promise could not have been specifically enforced, compliance after the debt was created was an act of preference, and operated as an assignment for benefit of all the creditors. That case is, we think, decisive of the question before us, and, in our opinion, the mortgage to Caldwell & Son operated in the same way, and the chancellor erred in sustaining it.

Wherefore, the judgment is affirmed, except as to the mortgage to Caldwell & Son, as to which it is reversed, and remanded for further proceedings consistent with this opinion.