## Keeton et al. v. Owens.

(Decided March 19, 1929.)

A. F. BYRD and CALLOWAY HOWARD for appellants.

W. R. PRATER and H. H. RAMEY for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE McCANDLESS
—Affirming.

On December 28, 1924, Winfred Keeton, Ermal Keeton, Pard Keeton, and Prock Owens executed a note for $1,400 to the Salyersville National Bank. Payment was demanded at maturity, and, none of the others contributing thereto, Prock Owens paid the amount due and took an assignment of the note from the bank. Later Owens filed this action to recover contribution of Ermal Keeton and Pard Keeton, alleging that they and he were sureties and only sureties, on the note, and that Winfred Keeton was principal. Winfred Keeton and Sam Keeton were also made parties defendant. It was alleged in the petition that Winfred Keeton had fraudulently conveyed certain real property to Sam, and a cancellation of that deed was asked. Plaintiff attacked certain deeds made by Ermal Keeton to Sam Keeton under the Act of 1856 (Acts 1855-56, c. 704), alleging that they were made to secure the indebtedness due Sam Keeton and in order to prefer him to other creditors. He also attached certain funds alleged to be due Pard Keeton by the Salyersville National Bank.

The defendants in separate pleas traversed the allegations of the petition, and alleged affirmatively that Prock Owens and Winfred Keeton were partners engaged in the live stock business; that the note sued on was executed by that firm, and the proceeds used in the partnership business. The defendants Pard and Ermal Keeton were sureties, and only sureties, of that firm on the note, while Winfred Keeton and Prock Owens were both principals. Other proper pleadings made up the issues. Pard Keeton executed bond under section 221, Civil Code, to perform the judgment of the court, with Sam Keeton as surety, and discharged the attachment; also, while much proof was taken on the subject, it clearly appears that Ermal Keeton was heavily indebted to his

father, Sam Keeton, and executed the deed in question for the sole purpose of securing that indebtedness.

The chancellor rendered judgment in favor of Owens against Pard and Ermal Keeton for two-thirds of the debt, with interest; and inasmuch as Sam Keeton had executed the bond with Pard Keeton to perform the judgment of the court, he directed an execution to issue against both Sam and Pard Keeton for the amount of the judgment against Pard. He further held the deed from Ermal Keeton to Sam Keeton void under the Act of 1856, and that it operated as an assignment for the benefit of Ermal's creditors. He directed that deed to be canceled and the property sold by the master commissioner and prorated among Ermal's creditors. Ermal, Sam, and Pard Keeton appeal.

As indicated supra, the propriety of the attachment against Pard's property and the issue of preferential conveyance by Ermal are fully established in appellee's favor and may be eliminated. The only issue remaining is as to whether Prock Owens was principal on the note or surety thereon. The evidence for plaintiff discloses that Prock Owens is a merchant in Magoffin county and a man of means; that he is a money lender, and not a borrower; that Sam Keeton is a colored man of some prominence, and that the other three defendants are his sons; that from time to time Prock Owens and Sam Keeton became surety on the notes of the younger men. Winfred Keeton traded in live stock, and Prock Owens had been his surety on various notes during several years. The $1,400 note sued on was a renewal of two notes of $1,000 each, which had been executed several years previously, and had been reduced to this amount. Prock Owens had refused to sign again, unless Winfred Keeton procured additional surety. Winfred procured Pard and Ermal Keeton to execute the renewal note as sureties, and then brought it to Owens, who signed it as the fourth obligor. He was never in partnership with Winfred, although his son Jasper had traded with Winfred for awhile, and he advanced money to the firm.

Defendant introduced several witnesses, including Sam Keeton's wife, who testified that Owens admitted to them that he was in partnership with Winfred. Winfred testifies that they were in partnership for a time, though he admits that the note in controversy was exe-

cuted in renewal of a debt that existed prior to such partnership, and that no part of the proceeds of it was used in the partnership business, and that Owens received no benefit therefrom. He further admits that he owed the note to the bank, and that Owens refused to renew unless he procured other sureties, and says that he (Winfred) told Pard and Ermal "that Prock did not want to sign himself, and I had the money borrowed, and Prock was on my note." Pard and Ermal both testify that Winfred informed them that this was a partnership note. They also testify that Owens had told them that he was in partnership with Winfred; both affirming that they would not have signed the note for Winfred, because they knew he was insolvent, but signed it for Owens. On surrebuttal, plaintiff introduced several witnesses impeaching the character of defendant's witnesses, and in view of the conflict in the evidence and the chancellor's acquaintanceship with the parties, we are not disposed to change his finding of fact.

It is argued, however, that even if Winfred Keeton and Prock Owens were not partners, and if in fact Owens was the surety of Winfred Keeton, nevertheless Ermal and Pard Keeton signed as sureties of Owens, and therefore were not liable for contribution to him. There is such a relation as surety of a surety. Thus in a note payable to C, and in which A is principal and B surety, D may sign as surety of both A and B. In such case A, B, and D are all liable to C; but, if B pay the note, he can have no contribution from D, because as between them D is only his surety, and this relation may be shown by extraneous evidence. Salter v. Salter's Creditors, 6 Bush, 624, and Chapeze v. Young, 87 Ky. 476, 9 S. W. 399, 10 Ky. Law Rep. 465. The obligation assumed by such surety is, however, for the benefit of the obligee on the note. Thus, in Chapeze v. Young, supra, Chapeze signed the note to the bank as surety for Gleeson. Gleeson carried the note to the bank, which was not satisfied with Chapeze's solvency. Thereupon Gleeson, without the knowledge of Chapeze, carried the note to Young, who was well acquainted with Chapeze, and, relying on Chapeze's solvency, signed it. Later Gleeson defaulted, and Chapeze paid the note, and in a suit for contribution Young was permitted to show the facts, and was exonerated from liability.

In this case it is admitted that Owens was solvent. The Bank of Salyersville was entirely satisfied with the obligors on the note, and was not requiring additional surety. Owens was declining to sign the note unless Winfred Keeton procured additional surety. Such additional sureties were liable to the bank. But they were not deemed necessary for its protection, and it is patent that their signatures were procured to lessen the liability of Owens. Winfred Keeton testified that he explained this fully to Pard and Ermal Keeton; whether he did so or not, all the facts and circumstances show that such was Owens' position at the time and entirely refutes appellant's claim that they were his sureties.

It is suggested that Sam Keeton and his three sons purchased the tract of land jointly; that Ermal Keeton purchased Pard and Winfred's shares, and borrowed the money from the bank to do this; that he also had other indebtedness at the bank, and that Sam paid this indebtedness off upon the parol agreement of Ermal that he would either give Sam a mortgage on the land, or deed it to him to secure its payment, and that this was afterwards done. But, if such was a fact, it would not take the case out of the statute. McCutchen v. Caldwell, 90 Ky. 249, 13 S. W. 1072, 12 Ky. Law Rep. 145. See also Avey v. Via, 225 Ky. 155, 7 S. W. (2d) 1057.

Wherefore, perceiving no error, the judgment is affirmed.