## FITZPATRICK'S ADM'R v. HILL.

1. After the Orphans' Court has rendered a final judgment, and adjourned
the term, it cannot grant a new trial.

2. A judgment was obtained against the sheriff and his sureties, for the de-
fault of the sheriff, in not making the money on a judgment against R. P.
one of the sureties to the official bond.    An execution issued on the judg-
ment against the sheriff, was levied on some slaves of R. P., who gave a
forthcoming bond, with S. as his surety.    This bond was forfeited, and an

execution issued against the sheriff, and his sureties, and including S., the surety to the forfeited bond; which last execution S. discharged. Held, that he could not sue the sureties of the sheriff for contribution.

Writ of Error to the Orphans' Court of Montgomery.

MARTIN, for plaintiff in error, cited 2 Porter, 324; 1 Ala. Rep. 734.

HAYNE and BELSER, contra.

ORMOND, J.—This was an issue tried upon the settlement of an insolvent estate, between the administrator and the defendant in error. The record discloses, that after several trials between these parties, on the 2d October, 1844, a verdict was returned for the administrator, and judgment rendered accordingly, and afterwards, on the 30th October, 1844, a motion was submitted by the plaintiff to the court for a new trial. This motion was objected to by the defendant upon the ground, that the term of the court at which the case was decided, had ended and determined, and that the court could not therefore grant a new trial; but the objection was overruled, and a new trial granted, to which the defendant excepted. Subsequently a judgment was rendered against the administrator.

It is an established principle in this State, that a court cannot grant a new trial after the term of the court during which it was made has closed, unless a motion for a new trial is made and continued. The duration of the term of the courts is, in most cases, ascertained by law. When they have authority to sit until the business is completed, the duration of the term is ascertained by the final adjournment, after which the court has no power over its judgments, unless it be to render a judgment *nunc pro tunc.*

The Judges of the Orphans' Courts, are required to appoint certain days, not less than one day in each month, for the return of process, in such cases as he is competent to hear and determine in vacation, and on each return day shall attend at the court house, to hear and determine such cases; and if on any return day the business then required to be acted on,

shall not be completed, the Judge shall attend on the succeeding day, and from day to day, until the business shall be completed : but for special cause, he may adjourn any part of the business to such other day as he may appoint. [Clay's Dig. 303, § 31.]

It is very evident, that the legislature did not intend, as is contended by the counsel for the defendant in error, that the court should be always open. It may, it is true, sit in vacation; it may adjourn to any other designated period; but when it renders a final judgment and adjourns, it has no further power over it. The judgments of the Orphans' Court are as important as those of any other court in the State, and it would be a most intolerable grievance, if the court, four weeks after the final judgment was rendered, and the court adjourned, could annul it. If it could thus act after four weeks, we are unable to perceive how any limit could be fixed to its action.

The judgment set aside in this case, is in the proper sense of the term a final judgment, and at any time after its rendition, and before it was set aside, a writ of error might have been prosecuted upon it. This is conclusive to show, that the Orphans' Court had no longer any power or control over it.

Although according to our practice, the granting or refusing a new trial, is a matter in the discretion of the primary court, which cannot be revised in this court, the case is entirely different, when a Judge, without authority, vacates a judgment, and directs the cause to proceed anew. In such a case the subsequent judgment is a nullity, and the whole proceedings *coram non judice.* As, however, there is an ostensible judgment, upon which execution may issue, a writ of error will lie to reverse it. Such was the decision of this court in Burr v. White, 2 Porter, 342.

It is also urged, that previous to the judgment of the Orphans' Court in favor of the plaintiff in error, which was set aside by the court, and a new trial granted, there had been a judgment in favor of the defendant in error, which, at the instance of the plaintiff in error was set a side, and a new trial granted in his favor, and that if the court could not set

99

aside the judgment in favor of plaintiff in error, neither could it set aside that of defendant in error. To this we answer, that it does not appear from the record that any objection was made to this action of the court, but it appears to have been submitted to, and acquiesced in, by the subsequent appearance of the party, which, according to the case of Hair v. Moody, at the present term, would be a waiver of the error, if any there was. Nor if the facts were as supposed, could it be urged against the present application—one error cannot be set off against another.

There is also another question presented upon the record, which is in our opinion decisive against the defendant in error. The facts were, that one Hill recovered a judgment against Rene Fitzpatrick and another, for upwards of $2000 upon this judgment an execution issued, and came to the hands of William Fitzpatrick, as sheriff, and he failing to make the money, a rule was entered against him, and a judgment obtained against him and his sureties, for the default. Upon this judgment an execution issued against the sheriff and his sureties, This execution was levied on three slaves of Rene Fitzpatrick, who entered into a forthcoming bond with the defendant as his surety, for the delivery of the slaves to the sheriff, to be sold to satisfy the execution. The slaves were not delivered, and the bond was returned forfeited. An execution then issued against all the parties, the sheriff and his sureties, of whom the intestate of the plaintiff in error was one, and also against the defendant in error, as surety on the forthcoming bond. The defendant in error then pays the amount of the judgment to Hill, and takes from him an assignment of the judgment, upon which he is now proceeding against the estate of Joseph Fitzpatrick, one of the sureties of the sheriff.

To understand this complex question, it is necessary to go back to the origin of this judgment, and ascertain the primary liability. That was, the omission of the sheriff to make the amount of the judgment against Rene Fitzpatrick. When therefore, the judgment was obtained for this default, against the sheriff and his sureties, (Rene being one,) if he had paid it, it is self-evident he could not have recovered the amount from the sheriff, because although the sheriff was liable to

Hill, the plaintiff, for not making the money, he, Rene, was the cause of the default, and in paying the judgment against the sheriff, was merely paying his own debt.

When Scott, the defendant in error, paid it, he could have recovered the whole amount from Rene, because he paid it as his security. Can he recover it from the sureties of the sheriff? This is the precise point involved in this question. It is then the case of one surety who has paid the debt of the principal, seeking to recover from another set of sureties. This right, the right to contribution, does not arise from the contract of the parties, but springs from the principle of equity, that those who have a common burthen to bear, should contribute equally, and the loss not be permitted to fall on one. [Dearing v. Winchelsea, 2 Bos. & P. 270 ; Ware v. Horwood, 14 Vesey, 35 ; Craythorne v. Swinburrne, id. 160.] It is unimportant whether they are bound by the same instrument, or not—that will make no difference if all the sureties have a common interest. Now what are the facts here. The sureties of the sheriff are all liable for the payment of this judgment, and have therefore a common interest, and a common burthen to bear. Scott is not the surety of the sheriff, but is the surety of Rene Fitzpatrick, who is primarily liable, being the cause of the default. His interest is not identical with their's. They are not sureties in the same transaction ; nor is their interest the same. The interest of the sureties of the sheriff, was adverse to the stay procured by the execution of the delivery bond, and the surety in that bond cannot therefore look to them for contribution for the payment of a debt, which but for his interference would have been discharged, at least to the extent of the levy, by the sale of the slaves. The principle of the case of Dunlap & Foster, 7 Ala. 734, appears to us to be identical with this, and it was there held that the subsequent surety could not recover from the previous sureties.

These considerations are. many of them, of an equitable nature, but they are such as the Orphans' Court, from its peculiar organization, must give effect to. We do not understand that the act of 1843, for the settlement of insolvent estates, abridged any of the powers of the Orphans' Court, further than to have issues tried at its bar, whenever the parties

thought proper to desire it. Indeed, the manifest design of the statute was to provide a more effectual mode for the speedy settlement of insolvent estates. An equitable bar therefore will be as effectual as a legal bar.

The question made upon the presentment of the claim need not be considered.

The judgment must be reversed.