JOSEPH B. SCHRAM, Plaintiff, v. HENRY WERNER and Others, Defendants.

*Subrogation — between co-sureties — limitation as to a surety's liability — oral proof thereof — promissory note, how far subject to oral proof.*

Where one has been compelled to pay a debt which ought to have been paid by another he is entitled to a cession of all the remedies which the creditor possesses against such other person.

The obligation of co-sureties to contribute to each other has grown out of the rule of equity that equality is equity, and is not founded on the idea of a contract between the sureties.

Contribution may be demanded by the one surety as against the other when the former has been compelled to pay the obligation of the principal debtor, although he was without any knowledge down to the time of payment, or even later, that his co-surety had also obligated himself to pay the same debt; nor will the fact of their becoming sureties at different times or by different instruments, without the knowledge of each other, affect their liability to contribute one to the other as co-sureties.

A surety, at the time of entering into the obligation of suretyship, may make such stipulation as he sees fit in regard to his liability, so long as it is done in good faith and his signature is not permitted to seem to be what it is not, so as to mislead others and induce them to become sureties under the belief that he is a co-surety for a common principal, when in fact his liability is restricted.

If the fact be that a person from whom contribution is sought as co-surety actually signed as a surety for the party claiming contribution as well as for the principal, that fact may be shown, although it does not appear in the writing by which he became bound. The contract may rest in parol, and if it does it may

be shown, and thereupon it will be given the same effect as if it were contained in the writing.

The obligation of a promissory note, as between its makers and the payee named therein, cannot be changed by parol evidence, but as between the signers to it it does not constitute the exclusive and only proof of their agreement and relations. It is proper by oral evidence to show the true relations of the signers and the real nature of the contract between them.

Upon the trial of an action brought by a surety against the drawers and acceptors of three drafts, asking that the plaintiff be subrogated to the remedies of the bank to which the draft had been paid by him against the acceptors thereof, it appeared that the plaintiff executed and delivered to a bank a bond by which he agreed to pay to said bank all present and future liability of the firm of I. Efron & Co., his liability to continue until terminated by notice; that while said bond was in full force the firm of I. Efron & Co. drew three drafts on a firm trading under the name of Henry Werner, and that the firm of Henry Werner accepted the drafts without consideration and for the accommodation of I. Efron & Co., but with knowledge on the part of the firm of Henry Werner of the existence of the plaintiff's guaranty, and with the understanding and agreement between it and the firm of I. Efron & Co. that the drafts were to be discounted with the bank which held the plaintiff's guaranty, by which guaranty as well as by the firm of I. Efron & Co. the acceptors were to be protected. Before the bank acquired the third acceptance, its cashier was informed by a member of the firm of Henry Werner that these three acceptances had been made for the accommodation of I. Efron & Co. in pursuance of an arrangement that the firm of Henry Werner should only be liable thereon after the firm of I. Efron & Co. and the plaintiff.

After the maturity and dishonor of the acceptances, the bank brought an action against the plaintiff upon the bond for the amount of the drafts, and collected from him that amount.

*Held,* that the firm of Henry Werner undertook to become surety for I. Efron & Co. and the plaintiff, and were not co-sureties with the plaintiff; that said firm was a successive surety, its liability being restricted to that of a surety for the principal debtor and the other surety, the plaintiff, and that the plaintiff was not entitled to recover on said drafts against said firm.

MOTION by the defendants, Henry Werner and others, for a new trial on a case containing exceptions, ordered to be heard at the General Term in the first instance upon the verdict of a jury in favor of the plaintiff, rendered by direction of the court after a trial at the New York Circuit on the 11th day of December, 1893.

*David Leventritt* and *Albertus Perry*, for the plaintiff.

*Nathaniel Myers*, for defendant Werner.

*Joseph Fettretch*, for defendant Strauss.

PARKER, J.:

In December, 1883, the plaintiff, who is the father of Samuel Schram, one of the members of the firm of I. Efron & Co., trading also under the name of Efron & Schram, executed and delivered to the Importers and Traders' National Bank of this city his bond, by which he undertook to pay to the bank all present and future indebtedness and liability of Isadore Efron and Samuel Schram, and each of them, whether they, or either of them, should be alone liable, or liable jointly with another or others, on any amount up to $30,000, the liability to continue until terminated by notice.

During the year 1887, and while the bond was in full force, I. Efron & Co. drew three drafts on the defendants Werner and Strauss, trading under the firm name of Henry Werner, and the latter accepted the drafts without consideration and for the mere accommodation of I. Efron & Co. These accommodation acceptances were made with full knowledge on the part of Werner and Strauss of the existence of plaintiff's guaranty, and upon a full understanding and agreement between them and I. Efron & Co. that the drafts were to be discounted at the Importers and. Traders' National Bank, and that the plaintiff's guaranty, as well as I. Efron & Co., was to protect the defendants Werner and Strauss. from loss.

Before the bank acquired the third acceptance its cashier was informed by the defendant Werner that the acceptances were for the accommodation of I. Efron & Co., made in pursuance of an arrangement with them that Werner and Strauss should only be liable after I. Efron & Co. and J. B. Schram, this plaintiff.

After the maturity and dishonor of the acceptances the bank, acting upon such understanding, brought an action in Wisconsin upon the bond given by J. B. Schram for the amount of the drafts, and therein obtained judgment and satisfaction.

Thereafter plaintiff commenced this action against the drawers and acceptors of the drafts, claiming that he, as surety for I. Efron & Co., having been compelled to pay the same to the holder of the drafts, was entitled by subrogation to all the rights, remedies and securities possessed by the bank as a means of enforcing payment of the drafts, including the drafts and debts represented by them.

The trial court was persuaded that this view was correct, and directed judgment for the full amount of the drafts against all of the defendants, including Werner and Strauss, the acceptors. The question is whether this ruling was right, in so far as it affects the accommodation acceptors.

The doctrine of subrogation is correctly stated by the learned counsel for the appellant as follows: "When one has been compelled to pay a debt which ought to have been paid by another, he is entitled to a cession of all the remedies which the creditor possessed against that other."

I. Efron & Co. were in this matter the principal debtors, and, as against them, the doctrine of subrogation can be successfully invoked. Had Werner and Strauss been, as upon the face of the acceptances they seemingly were, the principal debtors, the principle of subrogation would have been equally applicable to them; or had the plaintiff, with knowledge of the fact that Werner and Strauss were the acceptors of the drafts, acted on that appearance and without any other knowledge, then, as to him, Werner and Strauss would have been estopped from denying that they were such. But the facts were otherwise. The plaintiff had no knowledge of Werner and Strauss; he neither gave his guaranty on their account nor permitted it to continue in force longer than he otherwise would, because information had come to him that they were the acceptors. When the drafts were discounted there came into existence at the same moment a liability on the part of both plaintiff and Werner and Strauss to pay them. Their liability grew out of separate instruments, but both became liable nevertheless as sureties for I. Efron & Co. Whether they were co-sureties or successive sureties we must now inquire. If the former, they must equally divide the loss. If the latter, the one in the rear of the other must bear the entire burden.

The obligation of co-sureties to contribute to each other has grown out of that favorite rule of equity that equality is equity.

It is not at all founded on the idea of contract between sureties, and may be invoked by the one against the other when he has been compelled to pay for the principal debtor, although without any knowledge down to the time of payment or later that his co-surety has also obligated himself to pay the same debt.

Nor will their becoming sureties at different times and by different instruments without the knowledge of each other affect their liability to contribute one to the other as co-sureties.

If, then, there were no other facts than that Werner and Strauss became sureties for I. Efron & Co. by accepting the drafts for their accommodation, and that J. B. Schram became their surety for the same indebtedness by virtue of the bond lodged by him with the bank, the plaintiff would be in a position to insist that Werner and Strauss were his co-sureties for such indebtedness, and, therefore, bound to contribute to the extent of one-half of the amount paid by the plaintiff.

But the defendants Werner and Strauss undertook to become sureties for I. Efron & Co. *and* the plaintiff, not *with* the plaintiff. Their understanding with I. Efron & Co. was that they should respond only in the event that both they and their guarantor Schram could not pay, an event which I. Efron & Co. assured them could not possibly happen because J. B. Schram was such a very rich man.

The question now presented is whether this agreement operated to make J. B. Schram and Werner and Strauss successive sureties.

In considering that question it should be borne in mind that in no manner whatever, either by appearance or otherwise, did the defendants induce the plaintiff to give his bond to the bank, or to refrain from terminating his liability thereunder by notice.

Both his acts of commission and omission were without reference to or knowledge of Werner and Strauss, and he imposed no limitation whatever on his liability. On the other hand, when Isadore Efron and Samuel Schram requested the defendants Werner and Strauss to become sureties for them Werner and Strauss were informed of the guaranty of this plaintiff and of his ability to respond for the amount of the drafts should I. Efron & Co. fail to pay them.

The question propounded to Werner and Strauss was whether they would accommodate their friends who needed still another surety. It being a mere matter of accommodation, they were at perfect liberty to decline or accede to the request, and, if granted, to impose as a condition of their becoming sureties that they should not be co-sure-

ties with the plaintiff, but should be sureties for I. Efron & Co. and the plaintiff. This condition was insisted upon and assented to by the principal debtor. Had the condition been incorporated in the drafts, it would not be for a moment questioned, but they had accomplished what was intended, and had made themselves in fact sureties for the plaintiff as well as for I. Efron & Co.; for the rule is that the surety at the time of entering into the obligation of suretyship may make such stipulation as he sees fit in regard to his liability so long as it is done in good faith, and his signature is not permitted to seem to be what it is not, so as to mislead others and induce them to become sureties upon the belief that he is a co-surety for the principal, when in fact his liability is restricted. This rule is followed in *Harris* v. *Warner* (13 Wend. 400), where a principal and four sureties executed a note as makers. Opposite each of the names of the first three sureties was written the word "surety," while the fourth wrote opposite his signature "surety for the above names." The principal failing to pay, the first surety was compelled to, and sought contribution against all the others, including the fourth surety, and it was held that from him there was no right of contribution, because he had refused to sign as co-surety with the other sureties, and had a right to qualify his contract as he pleased within the rules of law. To the same effect is *Sayles* v. *Sims* (73 N. Y. 551). Other cases in which the rule has been referred to and applied might be cited, but it is deemed too well settled to call for a further citation of authority. But if the fact be that a person, from whom contribution is sought as co-surety, actually signed as a surety for the party claiming contribution, as well as the principal, it may be shown, although it does not appear in the writing by which he became bound. The contract may rest in parol, and if it does it may be shown, whereupon it will be given the same effect as if it were contained in the writing. This proposition is recognized in *Wells* v. *Miller* (66 N. Y. 255), where the court, in discussing the question of contribution between sureties, held that there will not be contribution if one surety stipulates for an advantage over the other.

The court said : " It is not sufficient that both parties are sureties — they must occupy *the same position* in respect to the principal and have no equities between themselves, giving an advantage to one over the other. And it is competent to prove by *parol*

the relation of the parties and that one surety agreed to indemnify another, *or any extrinsic facts affecting the equities* between them."

In *Chapeze* v. *Young* (87 Ky. 476) Chapeze had offered to become surety at the bank for one Gleason.

The bank requested another name, whereupon Gleason applied to Young. The latter said to Gleason, not to the bank, that he would become surety " on the condition and with the agreement that he was binding herself as the surety only of Gleason and Chapeze."

Chapeze was ignorant of the fact that Young's name was on the paper until the failure of Gleason to pay. The action was by Chapeze for contribution after payment of the paper, and Young had judgment. The existence of the agreement by which Young was restricted in his liability did not appear on the paper, but the court held on reasoning entirely satisfactory that the existence of such agreement between Young and Gleason, the principal debtor, could be shown by parol.

In *Adams* v. *Flanagan* (36 Vt. 400) there were four makers of a promissory note; opposite each of the names of the last two the word surety was written. The first surety paid the note and brought the action against the other to compel contribution.

Upon the trial it appeared that the second surety signed upon the express understanding with the principal debtor that he signed as surety for the plaintiff and not as co-surety with him. In denying his right to contribution, the court said : " As between the makers and the payee, the note excludes all parol evidence. * * * But, as between the signers to it, it was not made or intended to be the exclusive proof of their agreement and relations. It is well settled that it is open to parol evidence to show the true relations of the signers and the real nature of the contract between them."

It follows from these authorities that Werner and Strauss established, by competent evidence, the existence of an agreement by which their liability was restricted to that of sureties for the principal debtors, and the other surety, J. B. Schram, this plaintiff. And as there are no facts present which cause such restriction to be inequitable as against the plaintiff, they must be held to be successive sureties, and the plaintiff in the rear of the defendants Werner and Strauss, and, therefore, not entitled to recover as against them.

The exceptions should be sustained, and a new trial ordered as to the defendants Werner and Strauss, with costs to abide the event.

VAN BRUNT, P. J., and O'BRIEN, J., concurred.

Exceptions sustained, and a new trial ordered as to defendants Werner and Strauss, with costs to them to abide event.