143 So. 176

**UNITED STATES FIDELITY & GUARANTY CO. v. YEILDING BROS. CO. DEPARTMENT STORES et al.**

6 Div. 932.

Supreme Court of Alabama.

May 19, 1932.

Rehearing Denied June 23, 1932.

Coleman, Coleman, Spain & Stewart, of Birmingham, for appellant.

White E. Gibson, Cabaniss & Johnston, F. D. McArthur, David J. Davis, J. E. Bowron, London, Yancey & Brower, J. K. Jackson, Harris & Cook, Miller, Graham & Wingo, John S. Foster, E. M. Creel, Thos. J. Judge, and Morton Nesmith, all of Birmingham, and Frank B. Embry, of Pell City, for appellees.

FOSTER, J.

The original suit was commenced by Yeilding Bros. Co. Department Stores, Inc., upon a surety bond executed by the defendant, a surety company, under authority of section 28 of the Acts of 1927, page 356 et seq., known as the Highway Code.

The complaint alleged that the performance of the contract was completed December 10, 1929, and that said contract "has been completely performed and finally settled for." It did not allege the exact date of the final settlement. It is not necessary to do this, if

312

its date is approximately shown and that it occurred within sixty days before the suit was commenced (December 13, 1929). If the contract was completely performed on December 10th, and final settlement made before December 13th, which could not be done until the contract was completely performed, those occurrences took place, as alleged, on December 10th as to one, and after that date and before December 13th as to the other. Such allegations sufficiently comply with the rules of pleading. Fleischmann Const. Co. v. U. S., 270 U. S. 349, 46 S. Ct. 284, 70 L. Ed. 624.

If the suit is begun within sixty days after the complete performance of the contract and final settlement thereof, the status of it is fixed, and it is not necessary that the interveners shall make such averment in their petitions of intervention.

A final estimate was dated September 9, 1929, showing final balance due the contractor. Approved for payment by Finnell, highway director, Bibb Graves, Governor, without apparent date, and by Charles E. McCall, examiner of accounts on December 10, 1929.

Appellant argues that it does not appear that suit was filed within sixty days after September 9th, which was the date of final settlement. This claim is directly contrary to our case of United States F. & G. Co. v. Andalusia Mfg. Co., 222 Ala. 637, 134 So. 18. But appellant attacks the soundness of that holding because he claims the approval of the Governor and examiner of accounts is not required to fix the amount due the contractor; and that, when the director of the highway department approves it, the amount is determined. But we cannot agree. The amount is not determined until it is approved by such state officers as are necessary, under administrative regulations, to authorize the issuance of a warrant for it. Such funds are disbursed with the consent and approval of the Governor. Acts 1927, pp. 349, 350, § 6, and page 353, § 17. The examiner is required to examine and audit vouchers and records of all departments disbursing funds. Code, § 736. See Lambert Lumber Co. v. Jones Engineering & Const. Co. (C. C. A.) 47 F.(2d) 74. If the executive has prescribed a policy which requires the approval of the examiner before his approval, it is not in the province of the courts to hold that the necessary administrative officers have determined the amount due, when all have not done so pursuant to the practice of that department. Such time should be a matter of record and readily ascertainable, and it is of the utmost importance that there shall be no uncertainty in respect to it. The suit should not be commenced before that date, nor after sixty days succeeding it. The final settlement does not depend upon the consent of the contractor. It does not require a settlement between the state and contractor of the amount in fact due the contractor. That remains a question of which the contractor may have judicial determination. Illinois Surety Co. v. U. S., 240 U. S. 214, 36 S. Ct. 321, 60 L. Ed. 609; U. S., to Use of Stallings v. Starr (C. C. A.) 20 F.(2d) 803. But the record of the fact that the administrative officers have so far as the state is concerned determined the amount due, and the date of such determination, controls and fixes the right of claimants for labor, material, feedstuffs, and supplies to commence a suit. So long as that record is lacking the approval of all those executive or administrative officers required by the executive department finally to determine and fix the amount due so far as the state is concerned, the question is not finally settled. And the fact that certain administrative officers have so approved is evidence that their approval is necessary to make the fixation final.

We might have a different presumption, if the suit had been commenced without the approval of the examiner, and the defendant were claiming that the right had not accrued until such approval. In that event, the burden would be upon defendant to show that his approval was necessary. But, when he has approved, we think the burden should also be on defendant to show that his approval was not required. Otherwise the existence of such approval is prima facie evidence that it was required.

The complaint in this case alleges that S. C. Taylor was the original contractor for the road work, and the bond sued on was executed by him and defendant as surety, that he made default in the construction of the highway, and that defendant undertook to complete the project in accordance with the contract, and in its performance it employed R. S. Taylor as contractor to aid it in discharging its obligations as the surety of S. C. Taylor. The materials and supplies were so used in the execution of the work provided for in said contract. The record also shows that defendant had R. S. Taylor execute a bond with surety payable to it conditioned for the performance of his contract, etc., in form similar to the statutory bond. Defendant demurred to the complaint because it does not show a liability on the bond executed by it.

Section 28 of the Highway Act directs that the materialmen, etc., there mentioned who supply the same to the contractor shall have a right of action on the bond. R. S. Taylor was not the contractor mentioned in the bond, but was the contractor for defendant who had assumed a performance of the contract. Defendant was therefore in the position and shoes of the contractor, and R. S. Taylor in the position and shoes of a subcontractor, though not so in form. Certainly the bond and its statutory effect would apply to sup-

plies furnished defendant in the performance of the contract, as held in Mullin v. U. S. (C. C. A.) 109 F. 817.

It has been held that, when the contractor goes into receivership, and the receivers are in the act of completing performance of the contract, they are the representatives of the contractors, and the surety is responsible for labor and material sold them for its completion, to the same extent as though they were purchased by the contractor. Bricker v. Rollins & Jarecki, 178 Cal. 347, 173 P. 592.

■ The whole spirit of the law, the bond, and its statutory effect would seem to extend to one furnishing supplies to a contractor with this defendant as surety on such bond after it had begun its performance. The law should be liberally construed in this respect. Griffith v. Rundle, 23 Wash. 453, 63 P. 199, 55 L. R. A. 381; U. S. v. Rundle (C. C. A.) 100 F. 400.

■ Before announcing ready, · defendant objected to going to trial without a jury because a demand for a jury "had been made by the defendant as to certain interveners in the cause"; also moved to transfer the cause to the jury docket; also to continue the cause for the same reason. Each such objection and motion was overruled, and defendant excepted. The bill of exceptions does not show that defendant specified the interventions in which such demand had been made.

It has been held that under the federal act a suit by a claimant in the name of the United States is to proceed as a single case, in which the several claimants are not entitled to separate trials as of right, although in exceptional instances for special and persuasive reasons the distinct causes of action may be made the subject of separate trials. Whether this reasonably may be done in any particular instance rests largely in the court's discretion. Miller v. American Bonding Co., 257 U. S. 304, 42 S. Ct. 98, 66 L. Ed. 250; Arnold v. U. S., 263 U. S. 427, 44 S. Ct. 144, 68 L. Ed. 371.

They are not in the same situation as when several actions are consolidated, wherein the pleadings in all are taken and considered as one. 1 Corpus Juris, 136. It rather resembles an intervention properly so-called where a third party is interested in the distribution of funds. Section 9485, Code. For this reason some courts held at first that chancery was the proper forum; but the United States Supreme Court has settled the question under the federal statute, and held that the law court is the proper forum. Illinois Surety Co. v. U. S., 240 U. S. 214, 224, 36 S. Ct. 321, 60 L. Ed. 609, 615; Arnold v. U. S., supra. But the proceeding has some of the elements usually enforced in equity; as for the proper appropriation of the amount of the liability fixed in the bond among those entitled to it. National Surety Co. v. Graves, 211 Ala. 533, 101 So. 190.

But we agree with the United States court that the action is at law, and therefore governed by procedure in that forum and not that in equity. So that section 8593 et seq., Code, apply. By virtue of such authority (section 8593), defendant must file a demand for a jury trial within thirty days after notice to him. Under section 9485, Code, when one files a petition of intervention, it must be served on attorneys for the parties to the cause, who may answer or demur to it as an original complaint.

■ So that we take it that if any intervener wishes a trial by jury, he should make the demand at the time of filing his petition, and, if the defendant wishes a trial of such claim by a jury, the demand should be made within thirty days after the notice is served on him. The defendant may perhaps at the outset demand a trial by jury made expressly applicable to the entire cause, including interveners subsequently coming in. If such demand is made as to any such intervener's claim, when others have not so demanded, we think there is a special and persuasive reason why there should be a trial of the jury cases before a jury separate from the trial of the nonjury cases. But such demand made for the trial of two interventions does not require a trial of the others with a jury without their consent. The effect of defendant's motion was for a trial of them all by jury, and it does not show that such trial was due to be had. The bill of exceptions does not show that either appellant or the interveners objected to the trial without a jury of those interventions in which a jury was demanded. While our statute contemplates one proceeding in which all parties are entitled to be present and heard, the orderly presentation of the evidence and argument touching each claim and the rendition of verdicts and judgments in them is largely in the court's discretion. Miller v. American Bonding Co., supra.

■ The bill of exceptions also states that defendant suggested to the court that a number of interventions had been filed within thirty days prior to the trial, and defendant objected to the trial as to those claims so filed, and moved for a continuance of the cause.

We note that defendant did not call the attention of the court to the name of any intervention not at issue. It matters not when the intervention is filed in respect to the trial if it then is at issue. Appellant has not called our attention to any such intervention not then at issue. The limit of thirty days is but a time in which defendant must appear and present some issue either of law or fact by some nature of pleading. Section 9486, Code.

■ Appellant also contends that the facts specially found by the court do not include all those matters necessary to a rendition of the judgments. But this court has in several cases cited in Green v. Marlin, 219 Ala. 27, 121 So. 19, held that under existing statutes this court reviews a trial without a jury on the facts and evidence shown by the bill of exceptions, and is not now as formerly confined to the facts as specially found.

■ Appellant complains of the order of business of trying the case as directed by the judge in the following language:

"In order to expedite the trial of the case, I am going to let the interveners, the claimants, put all their testimony on regarding each claim they are going to prove by the same witness. Then when we get through with all the interveners' claims, then the defendant can cross examine the witness after the claimants or interveners get through with their testimony. We will just proceed with the witnesses for the claimants or interveners, then let the defendant's attorneys question the witness in regard to all of them.

"The defendant excepted to being put to trial and also excepted to being compelled by order of the court to have some sixty or seventy claimants' claims proved without having a right to cross examine the witness as to each claimant after the testimony of such claimant is offered, and to being compelled to wait until the claimants have entirely finished with all their testimony before defendant is permitted to put testimony on in regard to the defense of any one of the claims.

"The court stated that the defendant's counsel would be permitted to examine the witness before he left the stand."

Counsel argue that, though the court has a wide discretion in the regulation of a trial which involves the claims of approximately four score claimants, such procedure is an abuse of his discretion and prejudicial to defendant. But he does not undertake to show how it is so, other than may be inferred from the nature of the procedure. To conduct one case with so many different claimants justifies the use of such time-saving devices as will comport with an exercise of justice to all. The case was tried without a jury. We cannot agree with appellant's claim in this respect. Wade v. State, 50 Ala. 164; Fralick v. Presley, 29 Ala. 457, 65 Am. Dec. 413.

First National Bank (Successor of American Traders' National Bank), as Administrator of A. W. Bell, Intervener.

■ S. C. Taylor, the original contractor, was shown to have made a contract with Dr. A. W. Bell, the substance of which was that he agreed to and did pay Dr. Bell a commission of 1 per cent. for handling his financial affairs. This was calculated on the gross amount he collected from the state on the contract. Tennessee Mill & Feed Company and Western Grain Company each separately sold feedstuffs and supplies to Dr. Bell, and charged the amount to him, but delivered the goods to S. C. Taylor for use on the job in question. Dr. Bell executed his note to Tennessee Mill & Feed Company, and it has not been paid. He paid the account of Western Grain Company. But he took no assignment of either. No claim of payment by Taylor or defendant is made. This makes out a prima facie case against defendant in favor of some one. There was no assignment of either to intervener or Dr. Bell. The claim of defendant is that, due to the arrangement between Taylor and Dr. Bell whereby the latter was the financier of the former, Dr. Bell's claim is that of one who has extended financial credit to Taylor, such as a loan of money not secured by defendant's contract. But such was not the transaction as to those items. He did not by them merely extend financial credit. But the agreed facts admit of only the conclusion that he bought the feedstuffs and supplies on his sole credit, and had them delivered to Taylor. Taylor is not shown to have become indebted to any one for them except to Dr. Bell. The latter made no loan of money or credit. We cannot agree that these items do not show a debt to Dr. Bell and his estate for feedstuffs and supplies furnished by him to the contractor for the job, and that defendant is due to pay that amount to the intervener which the circuit court included in its judgment in favor of this intervener.

■ Magnus Grocery Company and Pan-American Petroleum Corporation sold and delivered feedstuffs and supplies to Taylor for use on the same project. Dr. Bell contracted with them, upon the faith of which they sold the goods to Taylor. We deduce this from the statement that Taylor "was unable to purchase on his own account without the guarantee of Dr. Bell." The terms of that contract, so far as we are now concerned (which was in writing), are that Dr. Bell does "hereby guarantee payment of the account of S. C. Taylor (etc.) for goods and supplies to be furnished by you from time to time," etc. After the death of Dr. Bell, the accounts were assigned to his administrator; he having paid the amounts of them to the merchants.

Appellant claims that this is but an extension of credit under the contract, or a loan for which defendant is not bound. Whatever force the contention might have if there had been no assignment of the claim, we cannot agree to that contention in the face of such assignment. Undoubtedly before Dr. Bell paid those accounts, and before they were assigned, the merchants had just claims which defendant was due to pay. If a surety or guarantor of a debt pays that debt, it is not a payment so far as to extinguish it against

the principal debtor. But the surety or guarantor thus paying it becomes subrogated to the rights and remedies of the creditor for its enforcement, even without an assignment. 12 R. C. L. 1098, 1099; Craft v. Standard Acc. Ins. Co., 220 Ala. 6, 123 So. 271. In this proceeding such right of subrogation would be enforced, if necessary. Sherrill Oil Co. v. Taylor, 223 Ala. 457, 137 So. 295. But the legal ownership passed by the assignment to the intervener.

But appellant also contends that both Dr. Bell and defendant were sureties for the payment of the claim, and that defendant as a cosurety is not liable beyond contribution to intervener—who is also claimed to be a cosurety. Intervener contends that the contract of Dr. Bell was a guaranty, and that his contract is in no respect that of a cosurety with defendant. Defendant's undertaking in several places refers to it as a surety, and in it defendant agreed "that such contractor shall promptly make payment to all persons supplying him or them with labor," etc. Intervener's intestate agreed, for a valuable consideration, to "guarantee the payment of the account," etc.

■ Not every contract by which the contractor stipulates and agrees that another will pay a debt is one of ordinary guaranty, whether the word "guarantee" is used or not. But if by the instrument the contractor unconditionally either agrees or guarantees the payment of a specified sum of money (or one ascertainable) at a given time, it is called an absolute guaranty, and it becomes his duty to see that the principal pays the debt when due. Leftkovitz v. First National Bank, 152 Ala. 521, 44 So. 613, 617; Ehl v. J. R. Watkins Medical Co., 216 Ala. 69, 112 So. 426; Donley v. Camp, 22 Ala. 659, 58 Am. Dec. 274; Zimmern's Co. v. Granade, 212 Ala. 172, 102 So. 210.

■ We consider the rule stated in those cases as authoritative, and that the contract of Dr. Bell and of defendant was each an absolute guaranty with the qualities of a suretyship.

■ If intervener's intestate is not a cosurety with defendant, but a supplemental surety, so that defendant's liability is primary, and that of deceased is secondary to the former, defendant cannot claim that the right of intervener is by way of contribution only, but in such relations the liability of the primary surety is as the principal to that of the secondary surety. 50 Corpus Juris, 313.

■ We do not overlook the fact that a cosuretyship may arise out of separate transactions or contracts and at different times, and exists "if several persons or sets of persons become sureties for the same duty or debt of, to and for the same persons, though by different instruments, at different times,

and without a knowledge of the obligations of each other, they will be bound to mutual contribution." But there must be a common interest and a common burden. United States Fid. & Guar. Co. v. Naylor (C. C. A.) 237 F. 314; 50 Corpus Juris, 278, 279; 2 Wait's Actions and Defenses, 297; Assets Realization Co. v. American Bonding Co., 88 Ohio St. 216, 102 N. E. 719, Ann. Cas. 1915A, 1194; Dunlap v. Foster, 7 Ala. 734.

■ But evidence extraneous the writings may be shown of circumstances which show that the liability of one was secondary to that of the other. 50 Corpus Juris, 314; Paul v. Berry, 78 Ill. 158; Keeton v. Owens, 228 Ky. 522, 15 S.W.(2d) 487; Schram v. Werner, 85 Hun, 293, 32 N. Y. S. 995.

■ Under some circumstances the presumption is indulged, the contrary not appearing, from the relation of the parties, as that accommodation indorsers are presumed to be liable in the order in which they indorse. Moody v. Findley, 43 Ala. 167; Abercrombie v. Conner, 10 Ala. 293; Spence v. Barclay, 8 Ala. 581; Brahan v. Ragland, 3 Stew. 247; 8 Corpus Juris, 289 et seq.

■ The liability of defendant is pursuant to a statute which fixes its details and limits and prescribes the procedure. If the time expires without a suit on the bond, that extinguishes the debt against defendant, but it could still be pursued against intervener's intestate's estate. If such contingency should exist, intervener could not get contribution against defendant, because the claim against it would have been extinguished by operation of law. Cosuretyship cannot exist unless there is coliability, "a common interest and a common burden." There can be coliability only for a period of sixty days, after which deceased alone is liable.

When deceased contracted liability, it was after defendant had contracted to the extent that and only as the statute prescribed. Such limited liability of defendant excludes the idea of being a cosurety with deceased, whose liability is not thus limited, for their obligations are different, and there is no "common interest and common burden." 30 Corpus Juris, 280; Dunlap v. Foster, 7 Ala. 734; Fitzpatrick's Adm'r v. Hill, 9 Ala. 783.

We cannot accept the contention that this intervener's intestate was a cosurety with defendant, and entitled to no more than contribution.

The judgment in its behalf is affirmed.

### Pan-American Petroleum Corporation.

This intervener sold material and supplies to R. S. Taylor who finished the job under agreement with defendant. For the reasons we have stated, the bond covers the claim, and the judgment in its behalf is affirmed.

### Budley Bar Company.

 The evidence for intervener was that it had a written contract with S. C. Taylor for bars for culverts on the project here in question; that on April 4, 1928, as shown by bill of lading it shipped to him at Cool Springs a carload of bars, and on April 4 and 9, 1928, invoiced to defendant the amount of the claim with freight of $11.90, and sent copy of the invoices to R. S. Taylor. Mr. Dudley testified that Taylor had several jobs'—in what counties he does not know; and identified an original ledger sheet, and stated that it was kept under his direction. The sheet contained various charges to S. C. Taylor. One item is here involved, April 4, 1928, $302.20, and April 9th, $11.90. On this sheet witness had entered in pencil the words "St. Clair Co. 164 A." That referred to the project with which we are now concerned. He further testified that he could not remember the items, and what he knew was shown by the bill of lading, the invoices, and ledger sheet. The ledger items, 'other than the two here involved, were not prejudicial. That entry made in due course, the bill of lading, invoices and contract in connection with his testimony are sufficient from which the court could find that the bars were sold and shipped to S. C. Taylor for this project. The ledger sheet was not subject to the objection interposed. Booker v. Benson Hardware Co., 216 Ala. 398, 113 So. 256; Morris v. Bessemer Lumber Co., 217 Ala. 441, 116 So. 528; Code, § 7701.

The judgment as to this intervener is affirmed.

### Mrs. C. W. Wall.

 It is shown that she is the wife of J. W. Wall, and also called Mrs. J. W. Wall. She was employed by Taylor to operate a kitchen at his camp for him, and the claim is for her services. The contractor testified that the kitchen was closed two or three months before the job was finished, but that she worked around the camp, whatever was to be done, and therefore was kept on the pay roll. She also looked after the commissary. In this she handled supplies for the employees, and was otherwise engaged on the job. Union Indemnity Co. v. Handley, 220 Ala. 292, 124 So. 876.

There is no error pointed out by appellant in respect to this claim, and it is affirmed.

### J. D. Head.

 This claimant rented to the contractor forty acres with eighteen houses on it for a camp site by written contract at the rate of $50 per month, and was used nine months, on which he paid only $50 in all.

The only question we need to discuss is whether such claim is covered by the bond. We have held that roofing used for camp houses is covered. United States Fid. & Guar. Co. v. Simmons, 222 Ala. 669, 133 So. 731. It has been held that the rental of cars, tracks, and other equipment used by the contractor is likewise within the bond. Ill. Surety Co. v. John Davis Co., 244 U. S. 376, 37 S. Ct. 614, 61 L. Ed. 1206. It is not necessary to incorporate everything in the operation to be within the coverage. Brogan v. Nat. Surety Co., 246 U. S. 257, 38 S. Ct. 250, 62 L. Ed. 703, L. R. A. 1918D, 776; Union Indemnity Co. v. Handley, 220 Ala. 292, 124 So. 876; U. S. Fid. & Guar. Co. v. U. S., 231 U. S. 237, 34 S. Ct. 88, 58 L. Ed. 200; Union Indemnity Co. v. State, 217 Ala. 35, 114 So. 415; Bricker v. Rollins & Jarecki, 178 Cal. 347, 173 P. 592.

A camp site may be as necessary as any supply, and is inherently consumed as such in its use. It is not permanent equipment, and we think is a "supply" within our statute.

Affirmed.

### Dickey Clay Manufacturing Company.

 This intervener sold clay pipe to S. C. Taylor, and he used some of it. But he later was adjudged a bankrupt, and the trustee seized a lot of the pipe then unused. He sold it to R. S. Taylor, working under defendant, and R. S. Taylor paid the purchase price into the bankrupt court where it was distributed to the creditors pursuant to law. The amount of such purchase price was the price at which claimant sold it to S. C. Taylor, to wit, $583.75, and R. S. Taylor used it on the job. We said in United States Fid. & Guar. Co. v. Benson Hardware Co., 222 Ala. 429, 132 So. 622, that, if the material is not used to promote the construction work covered by the bond, this may be shown and would defeat a recovery to that extent. The sale to S. C. Taylor by claimant was an entirely different transaction from that by which the trustee sold to R. S. Taylor. If the latter had not paid the price, the bond would cover it. But that he did pay it does not change its legal status. If it had not been paid, and the surety on the bond held liable to the trustee, and also liable to the intervener, because S. C. Taylor did not pay, there would be a double liability on the surety for the same debt. This illustrates the injustice of the claim to that extent. When the trustee seized and sold it, it was diverted from use on the project, and the sale to R. S. Taylor was but a fortuitous circumstance. It may have been to any one else who may not have so used it, or R. S. Taylor may have purchased such material from another. His purchase and use of it was not a part of the transaction with S. C. Taylor, which did not result in its use on that project. Its ultimate use was due to a new and different transaction.

In Bricker v. Rollins & Jarecki, 178 Cal. 347, 173 P. 592, cited by the intervener, the goods were furnished by the claimant to the receiver of contractor, then completing the contract for such contractor. Certainly the bond covered the account, the same as it covers accounts for material sold to R. S. Taylor in this case.

From this judgment of $1,753.25 there should be deducted the sum of $583.75, with interest from May 1, 1928. As so corrected, it is affirmed.

### Birmingham Slag Company.

By stipulation of counsel, it is agreed that the judgment of the court in respect to this claim shall be controlled by that of Dickey Clay Manufacturing Company. The record does not show, neither does the stipulation of counsel, the amount or value of the property sold by this intervener to the contractor, and which was on hand and in his possession and seized by the trustee in bankruptcy, and therefore we cannot render a judgment fixing the amount of the claim of this intervener. But, in view of the fact that counsel agree that there was an appreciable amount of such product which was seized by the trustee in bankruptcy, and sold under circumstances similar to that discussed with respect to the intervention of Dickey Manufacturing Company, it will be necessary to reverse and remand the judgment in respect to this claim that a proper one may be entered in the circuit court. That judgment is reversed and the cause remanded to that extent.

### Roquemore Gravel Company.

Appellant makes no contention as to this claim which we have not discussed or which we think needs discussion.

Affirmed.

### W. S. Brown Mercantile Company.

This intervener sold to R. S. Taylor feedstuff used to feed his mules on the project, and sold him other merchandise put in the commissary at Brompton, five or six miles from Leeds. The commissary was closed April 17, 1929, after which goods were sold to Taylor by intervener, but they are not here claimed nor included in the judgment.

He testified that out of the commissary goods were sold to farmers working for him, including groceries, and to his other employees and their families, indiscriminately, and to others who lived near by, and some of them were sold for credit, and quite a few still owe him for such merchandise; that he tried to add enough profit to take care of the commissary; that he tried to keep in line with other stores selling merchandise in that section. This intervener sold him white meat, beans, peas, corn, potatoes, syrup, salmon; that he carried a stock of $200 to $250; that, when he closed on April 17th, he had a supply of about $150 worth on hand. The biggest part of the stuff he used in boarding his men; that he conducted a long tabled boarding house for the men, and sold them merchandise at a small profit; carried shoes, cigarettes, tobacco, work gloves, flour, canned goods, and handled vegetables, greens, beans, and things like that; that, in his judgment, it is absolutely necessary to keep feedstuff (meaning food) on hand because 90 per cent. of the men are negroes, and we have to furnish them; that he paid off every two weeks, and what they got in the commissary and for their board was deducted from the pay roll.

We have not heretofore treated this exact question. We have considered as settled analogous questions; that food for laborers, feed for mules, clothing, tobacco, cigarettes for laborers, are "supplies," Union Indemnity Co. v. Handley, 220 Ala. 292, 124 So. 876; but that groceries sold to the contractor that went to his home for family consumption are not included, though he fed some hands from his home kitchen. United States Fid. & Guar. Co. v. Benson Hardware Co., 222 Ala. 429, 132 So. 622 (McGowin claim on page 629). Nor under the federal act are groceries sold him to conduct a boarding house as an independent enterprise, though they are included when furnished to feed laborers, when necessary to maintain them. Brogan v. Nat. Surety Co., 246 U. S. 257, 38 S. Ct. 250, 62 L. Ed. 703, L. R. A. 1918D, 776. Under a similar statute in Mississippi, practically the same result was reached (McElrath & Rogers v. W. G. Kimmons & Sons, 146 Miss. 775, 112 So. 164, 166, 680), in which it was observed that "ordinarily, supplies for a * * * commissary would not be allowed." That the goods were inherently "material, feed stuffs or supplies," purchased, sold, and delivered for use on the project, and useful and consumable in the performance of the contract and in contemplation when executed and fairly within its terms, was a fair deduction from the evidence. The seller could assume that they would be used for the purpose of performing the contract. The work was in progress. The contractor should probably have maintained a warehouse, instead of a commissary or store, open to the public, and have used the merchandise only to advance to the laborers and to feed them and the stock. But, when the prima facie case was made, the burden was upon defendant to show that such supplies or some definite amount of them were not so used. Defendant stands for the contractor. This information is or ought to be peculiarly possessed by the contractor. The seller is not so possessed. United States Fid. & Guar.

Co. v. Benson Hdw. Co., supra; United States Fid. & Guar. Co. v. Simmons, 222 Ala. 669, 133 So. 731.

In the Benson Case, supra (the McGowin claim), the groceries were not sold and delivered for use on the project, but went to the home of the contractor. The burden was therefore upon the seller to show what portion was used on or for the project. But here the goods were sold for use and delivered on the job. We do not here have a case where the seller knows that the contractor is conducting a commissary or store for the public, and selling to the public. If with that knowledge merchandise is sold to furnish the stock in trade of such a business, the principle of the McGowin claim in the Benson Case, supra, would be more applicable than to the facts of this one.

There is no evidence that any of the goods sold by this intervener were not used and consumed by the contractor or his employees in the promotion of this project, or that any of such goods were sold to the public or remained on hand when the contractor closed his works. There is no controversy as to the amount of the claim otherwise, and the judgment is for this intervener affirmed.

### Yeilding Bros. Department Stores.

R. S. Taylor testified that he bought from this plaintiff feedstuffs, oats, hay, mixed feed and groceries, shoes, etc., used on the project in question. The merchandise and supplies so described were placed in his commissaries. He then had two, one of them was at Brompton, five or six miles from Leeds, and one was at or near Leeds. The manner of their conduct and operation has been described in discussing the claim of Brown Manufacturing Company.

Assignments 17 and 18 do not show injury to appellant, because the evidence otherwise shows sales out of the commissary to the public. Nor do assignments 19, 20, 21, and 22. The opinion of the witness as to the necessity for keeping on hand feedstuff because 90 per cent. of the men are negroes, etc., is not subject to the objection urged; nor is the other evidence referred to in those assignments.

This claim is based upon the principles and discussion which we made use of with reference to the claim of Brown Manufacturing Company.

Affirmed.

### Taylor-Wheeler Grocery Company.

The evidence tends to show that this claim is for groceries sold to the original contractor, S. C. Taylor; that he had three commissaries, one at Leeds, one at Brompton, and one situated about midway between them; that at Leeds he carried a stock of $1,000 to $1,500, and at each of the other two a stock of $300 to $400; that the groceries were ordered for use on the project, and so delivered; that some of the goods were hauled by a truck engaged by the contractor, and some were sent by railroad; that interveners knew nothing about where they were stored by the contractor, nor how they were distributed. While the evidence of the operation of the commissary of R. S. Taylor did not apply to those of S. C. Taylor, it did show that at those of S. C. Taylor the goods were sold to the public; that S. C. Taylor closed his operations about April 16, 1928, and left his commissary and everything. He was later adjudged a bankrupt.

The invoices making the claim of interveners are:

| | |
|---|---|
| February 29, 1928 | $ 720.87 |
| March 31, 1928 | 1,169.91 |
| April 30, 1928 | 1,121.43 |
| | $3,012.21. |

It thus appears that one bill of $1,121.43 was delivered after he abandoned the work. We may presume that those goods went into the hands of the bankrupt trustee along with the balance of the stock of the commissary, or otherwise disposed of, but not used in the construction work. But we cannot presume that any of the goods on the bills of February 29th or March 31st were on hand on April 16th, nor that any of such goods were not used as contemplated by the seller. The seller is shown to know nothing of their disposition or method of distribution. We think the bill for $1,121.43 should not be allowed, and it is ordered deducted from the claim, leaving the two items of $720.87 and $1,169.91 as the amount with interest due this intervener. There is no other reversible error pertaining to this claim.

It is corrected and affirmed.

### Morton-Nesmith and Frank Embry.

Interveners were attorneys for Marble City Construction Company, which had a large claim against the contractor. They filed an intervention for this claimant in this cause. Thereafter appellant secured a release and satisfaction of the claim. Interveners then filed their intervention to enforce their lien as attorneys. The court allowed it.

Appellant does not appear to have informed the court what evidence was expected to the questions mentioned in assignments 300 and 301, or to show that such answers would have had material bearing on the question. Flowers v. Graves, 220 Ala. 445, 125 So. 659; Morgan-Hill, etc., Co. v. Pratt City Sav. Bank, 220 Ala. 683, 127 So. 500.

We do not think assignments 203, 204, 223, 224, 225, and 226 show reversible error. Tay-

lor testified to the correct amount of his indebtedness to Marble City Construction Company.

The court allowed the claim of interveners, and it does not appear that there was error in so doing.

Affirmed.

### Bill Pape Tire Company.

 We do not think a discussion of this claim is necessary. The evidence tends to show that it is a proper claim for gas, oil, and auto supplies sold for use and consumption on the project in question.

Affirmed.

### Crawford-Vaughn B. & L. Works.

Appellant makes no special contention as to this claim other than those which we have discussed in other portions of this opinion.

Affirmed.

### Young & Vann Supply Company.

The last foregoing statement applies to this claim, and as to it the judgment is affirmed.

Affirmed.

### Leeds Supply Company.

No reversible error is here shown, and the judgment is affirmed.

Affirmed.

### Labor claimants.

 R. S. Taylor testified to the amount of certain claims of laborers by reference to pay rolls which were made up every two weeks from the time books made on the job by the timekeeper. He checked the pay rolls with the time books. The pay roll was the only permanent record. The time books were in Tennessee at the time of the trial, and out of the jurisdiction of the court. He testified that he knew that he owed the people the amounts shown on the pay rolls; that he kept up with the operations, and was on the job most of the time. If the memorandum is made by another, but known to him, to state the facts truly, he may refresh his memory by a reference to it. Bolling v. Fannin, 97 Ala. 619, 621; 12 So. 59; Roll v. Dockery, 219 Ala. 374, 122 So. 630, 65 A. L. R. 1473; Ala. T. & L. Co. v. Hauer, 214 Ala. 473, 108 So. 339; Penney v. Warren, 217 Ala. 120, 115 So. 16; Oden-Elliott Lbr. Co. v. Daniel Gaddis Lumber Co., 210 Ala. 582, 98 So. 730.

We have discussed only some of the many assignments of error pertaining to the labor claims and others, though we have examined them all. Much relates to discretionary matters; many questions mentioned in the assignments were answered in sufficient form. Many of them seek immaterial evidence; many relate to matters shown without dispute by other testimony. Taking them all, we do not find error sufficient to reverse any of the judgments.

Affirmed.

### Cross-Assignments of H. Lewis.

 Intervener, a merchant and miller, testified that he ran a store located on F. A. P. 164-A just this side of Pell City, and he furnished lumber, camping materials, gas, bed springs and mattresses, quilts, and comforts to Spurgeon Taylor, W. A. Taylor, and H. R. Shores; that he personally knew that these materials and supplies that he sold to these respective contractors were used on the job known as F. A. P. 164-A, and he further knew that these supplies and materials were consumed or used on said project; that he had the respective bills furnished these contractors, and that they were the original bills rendered by him; that part of said bills were in his own handwriting and half in his wife's. One bill, he testified, was for $208.50, for comforts and other things delivered to the camp for construction house on the project of W. A. Taylor, who he knew was a subcontractor of Scott (S. C.) Taylor, the original contractor.

The cross-assignments of error relate to the judgment denying the claim and finding for defendant. The only amount shown in the evidence is a bill for $208.50 for comforts furnished the camp of W. A. Taylor. The testimony shows a claim for beds delivered to the same camp, and gas, lumber, and camping material and blankets. But there is no evidence of the amount except $208.50 for the comforts. The court, in denying a judgment to the intervener, stated that there is no testimony that S. C. Taylor ordered the goods. That may have prevented proof of the value of the other items. But we cannot presume error not shown by the record. However, if he showed a right to the $208.50, it was error to deny that amount at least.

Though S. C. Taylor may not have ordered them, yet, if they were sold to a subcontractor, and are supplies as defined by this court, in that connection, the surety on the bond is responsible for the items. State v. So. Surety Co., 221 Ala. 113, 127 So. 805, 70 A. L. R. 296; Memphis Milling Co. v. So. Surety Co., 222 Ala. 502, 133 So. 43.

In Singer v. Anniston Hardware Co., 222 Ala. 620, 133 So. 910, a claim for harness sold to a subcontractor was denied for the reasons stated that the equipment was used also on another job, and was used only for three or four days on the one secured by the bond, and then they were carried to the other job. The only question there treated was the use of the harness on the job in question.

In United States F. & G. Co. v. Simmons, 222 Ala. 669, 133 So. 731, we held that material for camp houses was of a temporary character and not a part of the permanent equipment, and is covered by the bond.

In Union Indemnity Co. v. Handley, 220 Ala. 292, 124 So. 876, we held that small tools, and other small articles such as soap, cups, tubs, buckets, brooms, and spoons are covered by the bond, though they be in the nature of equipment, and not wholly consumed or abandoned on the job.

■ In the case of United States F. & G. Co. v. Benson Hardware Co., 222 Ala. 429, 132 So. 622, we held that trucks were major articles of equipment, and were not included. We said that major articles of permanent equipment were not "supplies," and that articles should ordinarily be classed as "supplies" on the one hand or "equipment" on the other according to their inherent nature and not solely by the circumstance of whether they do or do not outlast the job. The Singer Case, supra, perhaps adds an additional condition, to wit, that small articles of some permanency, but otherwise classed as supplies, if they are found to be purchased near the close of the work for the apparent purpose of restoring the equipment and to be shortly removed to another job, should not be classed as supplies for the project which was then about complete. So that, while this inherent nature is a quality to be considered, good faith is likewise an element.

In respect to this case, the evidence tends to show that the articles in question were sold and delivered for and used and consumed on the job, and each of small value and soon consumable. We think that probably the court tried this claim on an erroneous theory, and, while the amount of the entire account was not proven, one item of it was. We think that there was therefore error in respect to it, and that there should be another trial as to that claim. As to it, therefore, the judgment is reversed and the cause remanded.

Reversed and remanded.

The net result of our conclusion is, that the judgments in favor of Dickey Clay Manufacturing Company and Taylor-Wheeler Grocery Company are corrected as we have herein indicated, and, as corrected, they are affirmed; and the judgment in favor of Birmingham Slag Company, as intervener, is reversed and the cause remanded to that extent; and the judgment in favor of all the other interveners are affirmed on the main appeal; and, on the cross-assignments of error by H. Lewis, the judgment against him is reversed and the cause remanded.

The cost of appeal which accrued in this court is taxed against Dickey Clay Manufacturing Company, Taylor-Wheeler Grocery Company, Birmingham Slag Company, jointly and severally, and the cost of appeal which accrued in the circuit court is all taxed against appellant, United States Fidelity & Guaranty Company.

Corrected and affirmed in part, and in part reversed and remanded.

ANDERSON, C. J., and GARDNER and BOULDIN, JJ., concur.

### On Rehearing.

### Taylor-Wheeler Grocery Company.

FOSTER, J.

■ Intervener contends that the three items which we copied are not invoices as of those dates, but that they are the totals entered on the books of S. C. Taylor at the end of each month for that month's purchases. The evidence shows that we might have been mistaken in finding that those were the dates of the invoices, for it shows that dray tickets for various deliveries made in February, March, and April were offered in evidence, and those dray tickets are not in the record, though it states that it contains all the evidence. The only evidence of their date is as we stated in the original opinion, other than that the deliveries were in February, March, and April. On the face of the record, it appears that there were deliveries in April, and the only date in the record is April 30th, after the contractor closed his operations April 16th. The record therefore shows error as to this item.

When that is shown, this court may either render such judgment as should have been rendered or reverse and remand, as it may deem right. Section 8599, Code. In view of the state of the record and the possible injustice of our judgment modifying and affirming that of the circuit court, we think it would be right to reverse and remand, rather than to modify and affirm it, as we did in the original judgment, and we so order. The judgment for costs will not thereby be affected.

The application for rehearing in other respects has been carefully considered, and it is overruled.

ANDERSON, C. J., and GARDNER and BOULDIN, JJ., concur.